UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

-------------------------------------------------------------------------------x

DONALD FIELD, ANGELICA FIELD, SENOVIA FIELD, S.F.,  :
a minor, TRACIE ARSIAGA, SYLVIA MACIAS, GILBERT      :
ARSIAGA, GEORGE ARSIAGA, MATTHEW ARSIAGA,           :
ANGEL MUNOZ, ROBI ANN GALINDO, PATRICIA             :
ARSIAGA FOR THE ESTATE OF JEREMY ARSIAGA,           :
TRACIE ARSIAGA FOR THE ESTATE OF ROBERT R.          :
ARSIAGA, CEDRIC HUNT, SR., MIRANDA PRUITT,          :
VELINA SANCHEZ, VELINA SANCHEZ FOR THE ESTATE       :
OF MOSES ROCHA, ALOYSIUS SANCHEZ, SR., ROMMEL       :
ROCHA, PHILLIP SANCHEZ, ALOYSIUS SANCHEZ, JR.,      :
ROBERT BARTLETT, TERREL CHARLES BARTLETT,           :
LINDA JONES, SHAWN BARTLETT, RAYMOND                :
MONTGOMERY, PATRICIA MONTGOMERY, BRYAN              :
MONTGOMERY, TONY WOOD, JOEDI WOOD, ADAM             :   Case No.:
WOOD, MEGAN WOOD, LISA RAMACI, ISABELL              :
VINCENT, CHARLES VINCENT, LISA RAMACI FOR THE       :
ESTATE OF STEVEN VINCENT, TAMARA HASSLER,           :
RICHARD E. HASSLER, JOANNE SUE HASSLER, SCOTT       :
HUCKFELDT, KATHRYN HUCKFELDT, ALISHA                :
HUCKFELDT, MATTHEW HUCKFELDT, TIMOTHY               :
NEWMAN, PADRAIC NEWMAN, AMENIA JONAUS,              :
GERNESSOIT JONAUS, AMENIA JONAUS FOR THE            :
ESTATE OF JUDE JONAUS, DAPHNIE JONAUS MARTIN,       :
RICKY JONAUS, MARCKENDY JONAUS, CLARE JONAUS,       :
SHAREN JONAUS MARTIN, GWENDOLYN MORIN-              :
MARENTES, E.M., a minor, AUDREY MORIN, STEVE        :   **COMPLAINT**
MORIN, SR., GWENDOLYN MORIN-MARENTES FOR THE        :
ESTATE OF STEVE MORIN, JR., AMY LYNN ROBINSON,      :
FLOYD BURTON ROBINSON, JACOB MICHAEL               :
ROBINSON, LUCAS WILLIAM ROBINSON, AMY              :
ROBINSON AND FLOYD ROBINSON FOR THE ESTATE OF       :
JEREMIAH ROBINSON, ALVIS BURNS, JODEE JOHNSON,      :
JAMES HIGGINS, WENDY COLEMAN, BRIAN RADKE,          :
NOVA RADKE, CLIFFORD L. SMITH, JR., GEORGIANNA      :
STEPHENS-SMITH, ANCIL STREETMAN STEPHENS,           :
CORENA MARTIN, CLIFFORD L. SMITH FOR THE ESTATE     :
OF KEVIN J. SMITH, WILLIAM F. HECKER, JR., NANCY    :
HECKER, JOHN D. HECKER, ROBERT F. MARIANO,          :
DEBRA MARIANO, BOBBIE MARIANO, ROBERT F.            :
MARIANO FOR THE ESTATE OF ROBBIE M. MARIANO,        :
VICKIE MICHAY WHITE, VICKIE MICHAY WHITE FOR        :
THE ESTATE OF STEPHEN J. WHITE, DEBORAH NOBLE,      :
DAVID NOBLE, CHARLES E. MATHENY, III, DEBORAH       :
NOBLE FOR THE ESTATE OF CHARLES E. MATHENY, IV,     :

PATRICK FARR, SILVER FARR, CARROL ALDERETE,        :
ANTHONY ALDERETE, CHAD FARR, PATRICK FARR FOR   :
THE STATE OF CLAY P. FARR, RAYANNE HUNTER, W.H.,   :
a minor, T.H., a minor, RAYANNE HUNTER FOR THE        :
ESTATE OF WESLEY HUNTER, FABERSHA FLYNT            :
LEWIS,  LORENZO SANDOVAL, SR., LORENZO               :
SANDOVAL, SR. FOR THE ESTATE OF ISRAEL DEVORA-    :
GARCIA, LORENZO SANDOVAL, JR., HENRY J.               :
BANDHOLD, ALFONSO BANDHOLD, MARIANA              :
BANDHOLD, H. JOSEPH BANDHOLD, DONALD C.            :
BANDHOLD, HENRY J. BANDHOLD FOR THE ESTATE OF  :
SCOTT BANDHOLD, LUKE MURPHY, WILLETTE              :
MURPHY, ERIK ROBERTS, E.C.R., a minor, ROBIN            :
ROBERTS, JAMES CRAIG ROBERTS, CARA ROBERTS,      :
COLIN ROBERTS, MARIA GOMEZ, MARIA GOMEZ FOR      :
THE ESTATE OF JOSE GOMEZ, NANETTE SAENZ, JUAN     :
SAENZ, NANETTE SAENZ FOR THE ESTATE OF CARLOS     :
N. SAENZ, JOAQINA SAENZ CHORENS, LUZ MARIA          :
ESTRADA, FRANCES CATHERINE CASTRO, ELVA             :
ESPINOZA, JOHN VACHO, ASHLEY VACHO LESLIE,         :
JOHN VACHO FOR THE ESTATE OF CAROL VACHO,         :
JOHN VACHO FOR THE ESTATE OF NATHAN J. VACHO,    :
DONNA ENGEMAN, DONNA ENGEMAN FOR THE            :
ESTATE OF JOHN ENGEMAN, JEANETTE WEST, SHELBY    :
WEST, JEANETTE WEST FOR THE ESTATE OF ROBERT H.  :
WEST, SUZZETTEE LAWSON, C.L., a minor, SUZZETTEE    :
LAWSON FOR THE ESTATE OF ISAAC S. LAWSON, ARNE    :
EASTLUND, TINA EASTLUND, SVEN EASTLUND,            :
TAYLOR EASTLUND, ELIZABETH JO EASTLUND,            :
MATTHEW ADAMSON, R.A., a minor, KATHY ADAMSON,  :
RICHARD ADAMSON, CHRISTOPHER ADAMSON,            :
JEFFREY ADAMSON, JUSTIN ADAMSON, JAMES            :
SHEPARD, JOHN P. SKLANEY, III, KATHY STILLWELL,    :
M.C., a minor, KATHY STILLWELL FOR THE ESTATE OF   :
DANIEL CRABTREE, JUDY ANN CRABTREE, RONALD       :
WAYNE CRABTREE, DEBRA WIGBELS, RONALD            :
WILLIAM CRABTREE, JUDY HUENINK, SEAN SLAVEN,      :
CHASTITY DAWN LAFLIN, NICOLE LANDON, MISTI         :
FISHER, JUDY HUENINK FOR THE ESTATE OF             :
BENJAMIN SLAVEN, PHILIP ALAN DERISE, FRED FRIGO,  :
NANNETTE BYRNE-HAUPT, LYNN FOREHAND, LANCE       :
HAUPT, RHONDA HAUPT, TIFANY HAUPT THOMPSON,      :
SABRINA CUMBE, WILLIAM WITTE, WILLIAM WITTE        :
FOR THE ESTATE OF KEVIN M. WITTE, MICHAEL MOCK,   :
TAMMY DORSEY, AMBER HENSLEY, DAVID W. HAINES,    :
DAWN HAINES, C.H., a minor, MACKENZIE HAINES,        :
HARRY RILEY BOCK, JILL ANN BOCK, MARIAH            :

2

SIMONEAUX, LAWRENCE KRUGER, CAROL KRUGER,                           :
DOUGLAS KRUGER, KRISTY KRUGER, GLENN MICHAEL          :
COX, SANGSOON KIM, SEOP KIM, MICHELLE KIM, SEOP       :
KIM FOR THE ESTATE OF JANG HO KIM, HELEN              :
FRASER, RICHARD FRASER, RICHARD FRASER FOR THE        :
ESTATE OF DAVID M. FRASER, TRICIA ENGLISH, N.W.E.,    :
a minor, N.C.E., a minor, A.S.E., a minor, TODD DAILY FOR  :
THE ESTATE OF SHAWN ENGLISH, JOSHUA STARKEY,          :
LINDA GIBSON, JOHN GIBSON, STEPHANIE GIBSON           :
WEBSTER, SEAN ELLIOTT, TRAVIS GIBSON, WILLIAM         :
RONALD LITTLE, BRENDA LITTLE, KIRA SIKES,             :
BRENDA LITTLE FOR WILLIAM RONALD LITTLE, JR.,         :
JOSH DENMAN, DEBBIE BEAVERS, DENISE VENNIX,           :
JEREMY BLOHM, JEREMY BLOHM FOR THE ESTATE OF          :
CHRIS BLOHM, KIANA BLOHM, JAMES SMITH, MEGAN          :
MAUK, ROBERT VACCARO, JAZMON REYNA, ANGEL             :
GOMEZ, ANDREW MOORES, CHRISTOPHER WATTS,              :
JESSE WILLIAMSON, TYLER LATHAM, ANGEL MAYES,          :
LUKE STIGGINS, DONALD MAYES, and ANGEL MAYES          :
FOR THE ESTATE OF ANTONIO STIGGINS,                   :
                                                      :
              Plaintiffs,                             :
                                                      :
-against-                                             :
                                                      :
BANK MARKAZI JOMHOURI ISLAMI IRAN                     :
Mirdamad Boulevard                                    :
No. 198                                               :
Tehran, Iran,                                         :
                                                      :
BANK MELLI IRAN                                       :
Ferdowsi Avenue                                       :
Tehran, Iran,                                         :
                                                      :
and                                                   :
                                                      :
NATIONAL IRANIAN OIL COMPANY                          :
Hafez Crossing                                        :
Taleghani Avenue                                      :
Tehran, Iran,                                         :
                                                      :
              Defendants.                             :
-----------------------------------------------------------------------------x

Plaintiffs, by and through their attorneys, allege the following:

## I.   <u>NATURE OF THE ACTION</u>

1.     This is a civil action pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A ("FSIA"), for wrongful death, personal injury and related torts, by the estates and families of United States nationals and/or members of the U.S. armed forces who were killed or injured in Iraq by agents of the Islamic Republic of Iran ("Iran") between 2004 and 2011.

2.     Iran's aforementioned agents included the U.S.-designated Foreign Terrorist Organization (as that term is defined in 8 U.S.C. § 1189) Hezbollah; the Islamic Revolutionary Guard Corps ("IRGC"), whose subdivision known as the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF") is a U.S.-designated Specially Designated Global Terrorist ("SDGT"); and other terrorist agents that included a litany of Iraqi Shi'a terror groups referred to herein collectively as "Special Groups."

3.     Both before and during the U.S. occupation of Iraq and its subsequent peacekeeping mission, Iran supported a terror campaign against U.S. troops, civilian personnel and Iraqi civilians.

4.     During the period of 2004 through 2011 (the "relevant period"), Iran was under stringent international sanctions that limited its access to the U.S. financial system and U.S. export-controlled technologies, spare parts and raw materials.

5.     In order to fund its terror campaign in Iraq and other nefarious activities, Iran directed its state owned and/or operated banks, including Defendants Bank Markazi Jomhouri Islami Iran ("Bank Markazi," "Central Bank of Iran" or "CBI"), Bank Melli Iran and the state owned and operated National Iranian Oil Company ("NIOC") to conspire with an assortment of Western financial institutions willing to substantially assist Iran in evading U.S. and international

economic sanctions, conducting illicit trade-finance transactions and disguising financial payments to and from U.S. dollar-denominated accounts.

6.      As detailed below, the Defendants herein directed millions of U.S. dollars in arms, equipment and materiel to Hezbollah, the IRGC and the IRGC-QF, which, in turn, trained, armed, supplied and funded Iran's terrorist agents in Iraq in carrying out their attacks against Plaintiffs and their family members.

## II.      JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter and over the Defendants pursuant to 28 U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a)(2), and the FSIA, 28 U.S.C. § 1605A(a)(2), which create subject-matter and personal jurisdiction for civil actions for wrongful death and personal injury against "foreign states" that have been designated as State Sponsors of Terrorism and their officials, employees and agents.[1]

8.      The United States officially designated Iran a State Sponsor of Terrorism on January 19, 1984, pursuant to § 6(j) of the Export Administration Act, § 40 of the Arms Export Control Act, and § 620A of the Foreign Assistance Act.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

---

[1]      28 U.S.C. § 1603(b) defines "foreign state" to include "a political subdivision of a foreign state or an agency or instrumentality of a foreign state." The statute defines an "agency or instrumentality" as any entity (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of the foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by the foreign state or political subdivision thereof, and (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e), nor created under the laws of any third country.

### III.   FACTUAL ALLEGATIONS

### A.   DEFENDANTS

### 1.   BANK MARKAZI JOMHOURI ISLAMI IRAN

10.     Bank Markazi Jomhouri Islami Iran is the central bank of Iran.  The Central Bank of Iran was established in 1960, and, according to its website, CBI is responsible for the design and implementation of Iran's monetary and credit policies.[2]

11.     CBI is headquartered at Mirdamad Boulevard, No. 198, Tehran, Iran.

12.     CBI has provided millions of dollars to terrorist organizations via other Iranian-owned and controlled banks.  For example, in a press release issued by the U.S. Treasury Department in 2007 regarding the designation of the Iranian-owned Bank Saderat as an SDGT, the U.S. Government noted that:

> Bank Saderat, which has approximately 3200 branch offices, has been used by the Government of Iran to channel funds to terrorist organizations, including Hezbollah and EU-designated terrorist groups Hamas, PFLP-GC, and Palestinian Islamic Jihad. For example, from 2001 to 2006, Bank Saderat *transferred $50 million from the* **Central Bank of Iran** *through its subsidiary in London to its branch in Beirut for the benefit of Hezbollah fronts in Lebanon that support acts of violence*. (Emphasis added.)

13.     According to the United States' Financial Crimes Enforcement Network ("FinCEN"):

> The Central Bank of Iran, which regulates Iranian banks, has assisted designated Iranian banks by transferring billions of dollars to these banks in 2011. In mid-2011, the CBI transferred several billion dollars to designated banks, including Saderat, Mellat, EDBI and Melli, through a variety of payment schemes. In making these transfers, the CBI attempted to evade sanctions by minimizing the direct involvement of large international banks with both CBI and designated Iranian banks.

---

[2]        http://www.cbi.ir/page/GeneralInformation.aspx.

14.     CBI is an alter-ego and instrumentality of the Iranian government and its Supreme Leader, and it has routinely used Iranian banks like the other Defendant Iranian banks as conduits for terror financing and weapons proliferation on behalf of the Iranian regime.

### 2.     BANK MELLI IRAN

15.     Bank Melli Iran, one of the largest banks in Iran, was established in 1927 by order of the Iranian Parliament.

16.     Following the Iranian Revolution in 1979, all banks in Iran were placed under state control, and most remain effectively under the control of the Iranian regime.

17.     Bank Melli Iran is wholly owned by Iran.

18.     Bank Melli Iran is headquartered at Ferdowsi Avenue, Tehran, Iran.

19.     Bank Melli Iran maintains a branch office in Germany, located at Holzbrücke 2, 20459 Hamburg, Germany.

20.     Bank Melli Iran is an "agency or instrumentality" of the government of Iran as defined by 28 U.S.C. § 1603(b).

21.     According to the U.S. government, between 2004 and 2011, Bank Melli Iran transferred approximately $100 million USD to the IRGC-QF, which trained, armed and funded terrorist groups that targeted, killed and maimed American and Iraqi forces and civilians.

22.     In October 2007 and throughout the remainder of the relevant period, Bank Melli Iran was designated as a Specially Designated National ("SDN") pursuant to Executive Order ("E.O.") 13382, and included on the Office of Foreign Assets Control's SDN list.[3] The U.S. Treasury Department press release announcing the designations stated:

---

[3]     "The Office of Foreign Assets Control ("OFAC") of the U.S. Department of the Treasury administers and enforces economic and trade sanctions based on US foreign policy and national security goals against targeted foreign countries and regimes, terrorists, international narcotics traffickers, those engaged in activities related to the proliferation of weapons of mass destruction, and other threats to the national security, foreign policy or economy of

Bank Melli also provides banking services to the [Iranian Revolutionary Guard Corps] and the Qods Force. Entities owned or controlled by the IRGC or the Qods Force use Bank Melli for a variety of financial services. From 2002 to 2006, Bank Melli was used to send at least $100 million to the Qods Force. When handling financial transactions on behalf of the IRGC, Bank Melli has employed deceptive banking practices to obscure its involvement from the international banking system. For example, Bank Melli has requested that its name be removed from financial transactions.

23.    A State Department diplomatic cable from March 2008 noted that:

Bank Melli and the Central Bank of Iran also provide crucial banking services to the Qods Force, the IRGC's terrorist supporting arm that was headed by UNSCR 1747 designee Commander Ghassem Soleimani. Soleimani's Qods Force leads Iranian support for the Taliban, Hezbollah, Hamas and the Palestinian Islamic Jihad. Entities owned or controlled by the IRGC or the Qods Force use Bank Melli for a variety of financial services.

24.    In addition, during the relevant time period, Bank Melli Iran financed evasions of U.S. sanctions on behalf of the Iranian-owned airline and SDGT, Mahan Airlines ("Mahan Air") and Iran's Ministry of Defense and Armed Forces Logistics.

25.    For example, Bank Melli issued a Letter of Credit to Mahan Air in August 2004 to help Mahan Air illegally acquire aircraft engines subject to the U.S. embargo.

26.    Bank Melli's financial support and assistance to Mahan Air is particularly significant because on October 12, 2011, the United States designated Mahan Air as an SDGT for "providing financial, material and technological support to the Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF). Based in Tehran, Mahan Airlines provides transportation, funds transfers and personnel travel services to the IRGC-QF."

27.    The Treasury Department explained Mahan Air's direct involvement with terrorist operations, personnel movements and logistics on the IRGC-QF's behalf:

---

the United States." https://www.treasury.gov/about/organizational-structure/offices/Pages/Office-of-Foreign-Assets-Control.aspx

Mahan Air [has] facilitated the covert travel of suspected IRGC-QF officers into and out of Iraq by bypassing normal security procedures and not including information on flight manifests to eliminate records of the IRGC-QF travel.

Mahan Air crews have facilitated IRGC-QF arms shipments. Funds were also transferred via Mahan Air for the procurement of controlled goods by the IRGC-QF.

In addition to the reasons for which Mahan Air is being designated today, Mahan Air also provides transportation services to Hezbollah, a Lebanon-based designated Foreign Terrorist Organization. Mahan Air has transported personnel, weapons and goods on behalf of Hezbollah and omitted from Mahan Air cargo manifests secret weapons shipments bound for Hezbollah.

28.    Mahan Air was also later identified as the conduit to Iran of *thousands* of radio frequency modules recovered by Coalition Forces in Iraq from Improvised Explosive Devices ("IEDs") and Explosively Formed Penetrators ("EFPs") that were used to target U.S. and Coalition Forces.

29.    In mid-2007, Bank Melli Iran's branch in Hamburg transferred funds on behalf of Iran's Defense Industries Organization ("DIO").

30.    DIO is an Iranian government-owned defense manufacturer whose name, logo and/or product tracking information was stamped on munitions found in weapons caches that were seized from the Special Groups in Iraq, including large quantities of weapons produced by DIO in 2006 and 2007 (*i.e.*, 107-millimeter artillery rockets, as well as rounds and fuses for 60-millimeter and 81-millimeter mortars).

### 3.    NATIONAL IRANIAN OIL COMPANY

31.    The National Iranian Oil Company, owned and overseen by the Government of Iran through its Ministry of Petroleum, is responsible for the exploration, production, refining and export of oil and petroleum products in Iran.

32.    NIOC is headquartered at Hafez Crossing, Taleghani Avenue, Tehran, Iran.

33.     NIOC is an "agency or instrumentality" of the Government of Iran as defined by 28 U.S.C. § 1603(b).

34.     In 2008, the Treasury Department identified NIOC (and other Iranian agencies) as "centrally involved in the sale of Iranian oil, as entities that are owned or controlled by the [Government of Iran]."

35.     Pursuant to E.O. 13382, the U.S. Government designated NIOC as an SDN.

36.     The U.S. Government has identified NIOC as an agent or affiliate of the IRGC.

37.     In September 2012, the U.S. Treasury Department handed its report to Congress regarding its determination that NIOC is an agent or affiliate of the IRGC. The report provided that:

> Recently, the IRGC has been coordinating a campaign to sell Iranian oil in an effort to evade international sanctions, specifically those imposed by the European Union that prohibit the import, shipping, and purchase of Iranian oil, which went into full effect on July 1, 2012.
>
> Under the current Iranian regime, the IRGC's influence has grown within National Iranian Oil Co. For example, on August 3, 2011, Iran's parliament approved the appointment of Rostam Qasemi, a Brigadier General in the IRGC, as Minister of Petroleum. Prior to his appointment, Qasemi was the commander of Khatam Al-Anbia, a construction and development wing of the IRGC that generates income and funds operations for the IRGC. Even in his new role as Minister of Petroleum, Qasemi has publicly stated his allegiance to the IRGC.

38.     As the IRGC has become increasingly influential in Iran's energy sector, Khatam Al-Anbia has obtained billions of dollars' worth of contracts with Iranian energy companies, including NIOC, often without participating in a competitive bidding process.

39.     Under the Iran Threat Reduction and Syria Human Rights Act of 2012 ("ITRSHRA"), the U.S. government determined that NIOC is an agent or affiliate of the IRGC under section 104(c)(2)(E)(i) of the Comprehensive Iran Sanctions, Accountability, and

Divestment Act of 2010 and section 302 of ITRSHRA.  As part of that 2012 certification, NIOC

was formally determined to be part of the Government of Iran.

40.     In addition, the ITRSHRA provided that:

It is the sense of Congress that the National Iranian Oil Company and the
National Iranian Tanker Company are not only owned and controlled by the
Government of Iran but that those companies provide significant support to
Iran's Revolutionary Guard Corps and its affiliates.[4]

41.     After the events giving rise to the claims herein, the U.S. government withdrew this

determination as of 2016.[5]

42.     NIOC used its oil and natural gas revenues to launder money for the IRGC, often

using Defendant CBI for this purpose.

43.     In 2009, the Combatting Terrorism Center at West Point published a report on the

role of NIOC, particularly in the Maysan province in Iraq (situated along the southeast border

between Iran and Iraq), and its role in studying U.S. troop movements:

The establishment of a new U.S. and Iraqi [Forward Operating Base] on the
Iranian border has resulted in three waves of attacks in an area that was
formerly devoid of incidents …. The incident occurred in the same district
as the February 2007 EFP attack on a British aircraft at a Buzurgan dirt
airstrip, itself a reaction by Special Groups to UK long-range patrolling of
the Iranian border. This part of the border is increasingly the scene of U.S.
and Iranian countermoves to support their proxies and patrol the frontier;
Iranian intelligence gathering takes place using National Iranian Oil
Company helicopters and border guards, while U.S.-Iraqi helicopter-borne
joint patrols provide moral and material support to isolated Iraqi border
posts and local communities.

---

[4]     *See* https://www.treasury.gov/resource-center/sanctions/Documents/hr_1905_pl_112_158.pdf.

[5]     On January 16, 2016, as part of "Implementation Day" for the U.S. government's understanding with Iran
relating to its nuclear weapons program, the U.S. Treasury Department "determined that NIOC is no longer an agent
or affiliate of the IRGC."

44.     Thus, NIOC served a critical function in funding and supporting the IRGC's activities.

45.     NIOC also obtained letters of credit from western banks to provide financing and credit to the IRGC.[6]

B.     **IRAN'S LONG HISTORY OF SUPPORTING AND FINANCING TERRORISM**

46.     Since the Iranian Revolution in 1979, Iran has been a principal source of extremism and terrorism throughout the Middle East and the rest of the world, responsible for bombings, kidnappings and assassinations across the globe.

47.     As noted above, the United States designated Iran a State Sponsor of Terrorism on January 19, 1984. That designation has remained in force throughout the relevant period to this action.

48.     Iran has had a long, deep, strategic partnership with the Lebanese-based Foreign Terrorist Organization ("FTO") Hezbollah, which historically has served as Iran's proxy and agent, enabling Iran to project extremist violence and terror throughout the Middle East and around the globe.

49.     For more than 30 years, Iran, through the IRGC, has funded, trained and equipped Hezbollah.

50.     The IRGC-QF's "Department 2000" manages Iran's relationship with Hezbollah, which includes the flow of some of Iran's most sophisticated weapons systems, including military grade EFPs, anti-tank guided missiles, RKG-3 armor penetrating anti-tank grenades and various rockets, such as the Fajr-5.

---

[6]     The Superseding Indictment filed in *U.S. v. Zarrab* (filed in the S.D.N.Y (1:15-cr-00867)) demonstrates that, as late as 2013, NIOC continued to illegally launder U.S. dollars through U.S. financial institutions.

51.     Since the 2003 U.S. overthrow of Saddam Hussein's regime in Iraq, Iran has assiduously worked to expand its influence in Iraq and throughout the region in a variety of ways, including by fomenting violence and terrorism when such activities have served its ambitions.

C.      **IRAN ORCHESTRATED A TERROR CAMPAIGN IN IRAQ**

52.     Sometime after the 2003 U.S. invasion of Iraq, Hezbollah created "Unit 3800," an entity dedicated to supporting Iraqi Shi'a terrorist groups targeting Multi National Forces in Iraq ("MNF-I").

53.     Unit 3800 was established by Hezbollah leader Hassan Nasrallah at Iran's request.

54.     Unit 3800 has trained and advised various Shi'a militias in Iraq, later termed the Special Groups.

55.     Hezbollah training camps in southern Lebanon and Iran, and Hezbollah's expertise in the use of EFPs, kidnapping, communications and small-unit operations, were critical to the IRGC's operations in Iraq between 2004 and 2011.

56.     Iran's support of terrorist groups in Iraq was described in the U.S. State Department's 2005 *Country Reports on Terrorism*, which observed:

> Iran has provided political and ideological support for several terrorist and militant groups active in Iraq. Attractive to terrorists in part because of the limited presence of the United States and other Western governments there, Iran is also a safe haven in that known terrorists, extremists, and sympathizers are able to transit its territory and cross the long and porous border into Iraq. Iran also equips terrorists with technology and provides training in extremist ideology and militant techniques.

57.     According to the same report: "[t]he IRGC was increasingly involved in supplying lethal assistance to Iraqi militant groups, which destabilizes Iraq …. Senior Iraqi officials have publicly expressed concern over Iranian interference in Iraq, and there were reports that Iran provided funding, safe passage, and arms to insurgent elements."

58.     By early 2005, the presence of Hezbollah operatives in Iraq became an open secret when Iraqi Interior Minister Falah al-Naquib announced the arrest of eighteen Lebanese Hezbollah members on terrorism charges.

59.     Two years later, according to U.S. intelligence estimates—and following the 2007 arrest and interrogation of Hezbollah's senior operative in Iraq—the IRGC-QF provided Hezbollah and one of its local trainers, Ali Musa Daqduq (discussed in greater detail below), up to $3 million in U.S. currency every *month*.

60.     In 2008, Pentagon Press Secretary Geoff Morrell reported on the "smuggling system -- in which the Iranians are providing their allies within Iraq, these special groups, with the munitions that are then used to take on us, whether it be EFPs or rockets or conventional arms. These are being used by these special groups and being provided by the Iranians."

61.     According to a 2010 report by the Combatting Terrorism Center at West Point, Iran paid Iraqi "insurgent" groups "between $4,000 and $13,000 per rocket or roadside bomb, depending on the circumstances."

62.     According to Brigadier Gen. Kevin J. Bergner, a U.S. military spokesman who previously served as the Deputy Commanding General for MNF-I in Mosul, Iraq, "the Qods Force has provided armor-piercing weapons to extremist groups in Iraq, funneling them up to $3 million a month and training Iraqi militiamen at three camps near Tehran."

**D.      IRANIAN AGENTS DESIGNED AND PRODUCED EFPs USED TO KILL OR MAIM COALITION FORCES, INCLUDING THE PLAINTIFFS**

63.     Improvised Explosive Device is a term commonly used by the U.S. military as shorthand for a roadside bomb.

64.     However, in Iraq, the IRGC and Hezbollah supplied and trained various Special Groups to deploy EFPs.

65.     EFPs are a particularly effective form of manufactured IED usually made with a steel casing capped with a manufactured concave copper disk (called the "liner") and a high explosive packed behind the liner.

66.     In Iraq, EFPs were often triggered by various technologies, including passive infra-red sensors (tripped by the engine heat of passing vehicles) and radio frequency modules (triggering the weapon when high-powered radio waves were generated by Coalition Forces' jamming devices).

67.     Once triggered, an explosion took place within the steel casing of the EFP, forcing the copper liner forward, and turning it into a high-velocity molten slug, traveling at over a mile per second, that could pierce the military-grade armor of U.S. vehicles deployed in Iraq at distances as far as 300 feet from the EFP's emplacement.

68.     Metallurgic analysis by U.S. technicians helped confirm that the high-purity copper EFP liners were not generally produced in Iraq.

69.     Differences in the liners indicated the kind of press that was required to fabricate them—a heavy (hydraulic) press not commonly seen in Iraq.

70.     To produce these weapons, copper sheets were often loaded onto a punch press to yield copper discs. These discs were annealed in a furnace to soften the copper. The discs were then loaded into a large hydraulic press and formed into the disk-like final shape. This manufacturing process is critical to the design and concomitant lethality of the weapon.

71.     EFPs are far more sophisticated than homemade explosive devices such as traditional IEDs, and they are specifically designed to target vehicles such as armored patrols and supply convoys, though Hezbollah and the Special Groups have deployed them against U.S. and Iraqi civilians as well.

72.     Iran propagated its specialized weapons knowledge up and down its network of terror proxies in Iraq, as the U.S. State Department documented in its 2006 *Country Reports on Terrorism* regarding Iran's specific efforts to provide terrorists with lethal EFPs to ambush and murder U.S. and other Coalition Forces:

> Iran provided guidance and training to select Iraqi Shia political groups, and weapons and training to Shia militant groups to enable anti-Coalition attacks.  Iranian government forces have been responsible for at least some of the increasing lethality of anti-Coalition attacks by providing Shia militants with the capability to build IEDs with explosively formed projectiles similar to those developed by Iran and Lebanese Hezbollah. The Iranian Revolutionary Guard was linked to armor-piercing explosives that resulted in the deaths of Coalition Forces.  The Revolutionary Guard, along with Lebanese Hezbollah, implemented training programs for Iraqi militants in the construction and use of sophisticated IED technology. *These individuals then passed on this training to additional militants in Iraq.* (Emphasis added.)

73.     Also in 2006, Brigadier Gen. Michael Barbero, Deputy Chief of Staff for Strategic Operations of the MNF-I stated: "Iran is definitely a destabilizing force in Iraq. I think it's irrefutable that Iran is responsible for training, funding and equipping some of these Shi'a extremist groups and also providing advanced IED technology to them, and there's clear evidence of that."

74.     According to the U.S. State Department's 2008 *Country Reports on Terrorism*:

> The Qods Force, an elite branch of the Islamic Revolutionary Guard Corps (IRGC), is the regime's primary mechanism for cultivating and supporting terrorists abroad. The Qods Force provided aid in the form of weapons, training, and funding to HAMAS and other Palestinian terrorist groups, Lebanese Hezbollah, Iraq-based militants, and Taliban fighters in Afghanistan.…

> Despite its pledge to support the stabilization of Iraq, Iranian authorities continued to provide lethal support, including weapons, training, funding, and guidance, to Iraqi militant groups that targeted Coalition and Iraqi forces and killed innocent Iraqi civilians. Iran's Qods Force continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, and mortars that have killed Iraqi and Coalition Forces as well as civilians. Tehran was responsible for some of the lethality

of anti-Coalition attacks by providing militants with the capability to assemble improvised explosive devices (IEDs) with explosively formed projectiles (EFPs) that were specially designed to defeat armored vehicles. The Qods Force, in concert with Lebanese Hezbollah, provided training both inside and outside of Iraq for Iraqi militants in the construction and use of sophisticated IED technology and other advanced weaponry.

75.     One of the ways in which the IRGC provided "militants with the capability to assemble improvised explosive devices (IEDs) with explosively formed projectiles (EFPs) that were specially designed to defeat armored vehicles" included providing them with manufacturing supplies such as copper and steel, as well as machinery—including hydraulic presses used to form copper into the shape of disks used in EFPs.

76.     Iran also introduced other weapons into Iraq for the purpose of supporting terrorist attacks on U.S. and coalition personnel.

77.     These included Improvised Rocket-Assisted Munitions ("IRAMs"), RPG-29s and RKG-3 armor penetrating anti-tank grenades deployed by Special Groups.

78.     Likewise, the State Department's 2011 *Country Reports on Terrorism* reported:

> Despite its pledge to support the stabilization of Iraq, Iran continued to provide lethal support, including weapons, training, funding, and guidance, to Iraqi Shia militant groups targeting U.S. and Iraqi forces, as well as civilians. Iran was responsible for the increase of lethal attacks on U.S. forces and provided militants with the capability to assemble explosives designed to defeat armored vehicles. The IRGC-QF [Islamic Revolutionary Guard Corps-Quds Force], in concert with Lebanese Hezbollah, provided training outside of Iraq as well as advisors inside Iraq for Shia militants in the construction and use of sophisticated improvised explosive device technology and other advanced weaponry.

**E.     IRAN SUPPORTED SPECIAL GROUPS IN IRAQ THAT COORDINATED WITH HEZBOLLAH AND THE IRGC**

**1.     THE BADR CORPS/BADR ORGANIZATION**

79.     The Badr Corps was established in 1982 as the military wing of the Supreme Council for Islamic Revolution in Iraq.

80.     From its headquarters in Iran, the Badr Corps operated extensive clandestine networks throughout Iraq in the 1990s. The group smuggled men and weapons into Iraq to conduct attacks against the Iraqi regime of Saddam Hussein.

81.     Like Hezbollah, the Badr Corps established clandestine offices in businesses and social organizations in Iraq.

82.     The Badr Corps also used Iraqi front companies to recruit operatives, collect intelligence, and circulate propaganda materials in Shi'a populated areas.

83.     Before 2003, the Badr Corps served as Iran's most important surrogate inside Iraq, acting as a de facto arm of the IRGC-QF.

84.     The Badr Corps received training and weapons from the IRGC and Hezbollah.

85.     After Saddam Hussein's overthrow in 2003, the Badr Corps renamed itself the Badr Organization, and many of its operatives joined the newly formed Iraqi security forces.

86.     Published reports indicate that thousands of members of the Badr Organization remained on the IRGC-QF payroll after 2004.

87.     Several senior Badr Organization operatives later emerged as key conduits for funneling weapons to Iranian proxies in Iraq from 2004 through 2011, including Abu Mustafa al-Sheibani, a key smuggler of deadly Iranian IEDs and EFPs, and Jamal Ja'far Muhammad, a.k.a. Abu Mahdi al-Muhandis (a.k.a. "The Engineer"), who later led Kata'ib Hezbollah (discussed further below).

88.     "Department 1000" of the IRGC-QF, known as the Ramezan Corps, is in charge of Iraqi operations and remains the largest IRGC-QF command outside of Iran. It coordinated, armed and influenced the Badr Organization.

89.     Although the Badr Organization evolved into a major political organization with seats in the new Iraqi parliament, it also played a significant role in facilitating deadly Special

Groups operations in Iraq. A number of senior Special Groups commanders such as Al-Muhandis are, or were, Badr Organization personnel.

90.     After 2003, the IRGC inserted hundreds of its Iranian-trained operatives into Iraq's state security organs (notably the Iraqi Ministry of Interior's intelligence structure) in part through its influence within the Badr Organization.

### 2.     JAYSH AL MAHDI ("JAM" or the "MAHDI ARMY")

91.     Jaysh al Mahdi was established by radical Shi'a cleric Muqtada al-Sadr in June 2003. On April 18, 2004, JAM led the first major armed confrontation by Shi'a militias against U.S.-led forces in Iraq.

92.     JAM was co-founded by Imad Mughniyah, one of Hezbollah's most senior commanders.

93.     During the relevant period, JAM expanded its territorial control of mixed or predominantly Shi'a neighborhoods and displaced or killed the local Sunni population.

94.     JAM was able to gain initial control in many of the neighborhoods in and around Baghdad (such as the Shi'a slum locally known as "Sadr City") by offering the Shi'a population protection and social services.

95.     Al-Sadr dissolved part of his militia after 2007, but maintained a small group of Iranian-supported militants called the Promised Day Brigades ("PDB") to carry out attacks against Coalition Forces.

96.     The PDB has received funding, training and weapons from the IRGC and is one of the Special Groups.

97.     The PDB actively targeted U.S. forces in an attempt to disrupt security operations and further destabilize Iraq.

98.     For example, on June 28, 2011, the PDB issued a statement claiming responsibility for 10 mortar and Katyusha rocket attacks against U.S. military convoys in which U.S. officials confirmed that three U.S. troops were killed.

### 3.      KATA'IB HEZBOLLAH ("KH")

99.     Kata'ib Hezbollah has functioned as Iran's go-to terrorist militia in Iraq and received support from Lebanese Hezbollah, including training in weapons use, IED construction and operation, and sniper, rocket and mortar attacks.

100.    Historically, KH operated mainly in Shi'a areas of Baghdad, such as Sadr City, and throughout the south of Iraq.

101.    On June 24, 2009, the United States designated KH an FTO.

102.    The State Department's notice of KH's FTO designation stated that:

> The organization has been responsible for numerous violent terrorist attacks since 2007, including improvised explosive device bombings, rocket propelled grenade attacks, and sniper operations. Kata'ib Hezbollah also targeted the International Zone in Baghdad in a November 29, 2008 rocket attack that killed two UN workers. In addition, KH has threatened the lives of Iraqi politicians and civilians that support the legitimate political process in Iraq.

103.    KH was also simultaneously designated an SDGT under E.O. 13224, because it was "responsible for numerous terrorist acts against Iraqi, U.S., and other targets in Iraq since 2007."

104.    The U.S. Treasury Department also designated KH pursuant to E.O. 13438.

105.    The Treasury Department's 2009 press release announcing KH's designation explained that KH had "committed, directed, supported, or posed a significant risk of committing acts of violence against Coalition and Iraqi Security Forces…."

106.    The Treasury press release also stated: "[f]urther, the IRGC-Qods Force provides lethal support to Kata'ib Hizballah and other Iraqi Shia militia groups who target and kill Coalition and Iraqi Security Forces."

107.    The 2009 press release further reported that between March 2007 and June 2008, KH led a number of attacks against U.S. forces in Iraq, advising:

> [a]s of 2008, Kata'ib Hizballah was funded by the IRGC-Qods Force and received weapons training and support from Lebanon-based Hizballah. In one instance, Hizballah provided training--to include building and planting IEDs and training in coordinating small and medium arms attacks, sniper attacks, mortar attacks, and rocket attacks--to Kata'ib Hizballah members in Iran.

108.    Furthermore, the 2009 U.S. Treasury Department press release noted:

> Recordings made by Kata'ib Hizballah for release to the public as propaganda videos further demonstrate that Kata'ib Hizballah conducted attacks against Coalition Forces. In mid-August 2008, Coalition Forces seized four hard drives from a storage facility associated with a Kata'ib Hizballah media facilitator. The four hard drives included approximately 1,200 videos showing Kata'ib Hizballah's sophisticated planning and attack tactics, techniques, and procedures, and Kata'ib Hizballah's use of the most lethal weapons--including RPG-29s, IRAMs, and EFPs--against Coalition Forces in Iraq.

> One of the hard drives contained 35 attack videos edited with the Kata'ib Hizballah logo in the top right corner. Additionally, between February and September 2008, [Hezbollah's official television outlet] Al-Manar in Beirut, Lebanon, broadcast several videos showing Kata'ib Hizballah conducting multiple attacks against Coalition Forces in Iraq.

> Immediately preceding the Government of Iraq's approval of the United States-Iraq security agreement in late November 2008, Kata'ib Hizballah posted a statement that the group would continue fighting Coalition Forces and threatened to conduct attacks against the Government of Iraq if it signed the security agreement with the United States.

109.    In 2008, the U.S. Department of Defense described the linkages it found between KH, Iran and multiple terrorist attacks against Coalition Forces in Iraq—including KH's use of EFPs:

> [A]lso known as Hezbollah Brigades, is a terrorist group believed to receive funding, training, logistics and material support from Iran to attack Iraqi and coalition forces using what the military calls 'explosively formed penetrators' – roadside bombs designed to pierce armor-hulled vehicles – and other weapons such as rocket-assisted mortars.

110.    As noted above—and as stated by the U.S Treasury Department in its July 2009 press release—throughout 2008, *Al-Manar*, Hezbollah's official television outlet in Lebanon (and itself a designated SDGT since May 2006), played videos of KH launching rocket and IED attacks against U.S. troops.

111.    In this manner, Hezbollah helped publicize KH's activities and increase its profile among leading Shi'a terrorist groups.

112.    In a July 2010 press briefing, U.S. Army General Ray Odierno identified KH as the group behind increased threats to U.S. bases in Iraq.

113.    General Odierno confirmed that KH operatives had gone to Iran for special training and then returned to Iraq.

114.    General Odierno stated, "they are clearly connected to Iranian IRGC."

### 4.    ASA'IB AHL AL-HAQ ("AAH")

115.    Asa'ib Ahl Al-Haq is a Shi'a Special Group supported by Hezbollah and the IRGC-QF that conducted assassinations and operations against Iraqi civilians, Iraqi Security Forces and Coalition Forces.

116.    AAH was originally established by Senior Sadrist and MNF-I detainee Qais al-Khazali.

117.    AAH split from al-Sadr's JAM in 2006. Since that time, AAH has conducted thousands of IED attacks against U.S. and Iraqi forces, targeted kidnappings of Westerners and Iraqis, rocket and mortar attacks on the U.S. Embassy, murders of American and British soldiers, and assassination of Iraqi officials.

118.    At all relevant times, AAH received significant funding from Iran, and had links to Iran's IRGC-QF and Hezbollah.

119.    Senior Lebanese Hezbollah operative Ali Musa Daqduq ("Daqduq") provided training to AAH fighters.

120.    Daqduq reported to Youssef Hashim, the head of Lebanese Hezbollah Special Operations, and the latter reported to Abdul Reza Shahlai, the director of the IRGC-QF External Operations.

121.    AAH was one of the Iranian entities responsible for the January 20, 2007 Karbala attack on the Provincial Joint Coordination Center ("PJCC") that killed and/or injured some of the Plaintiffs (discussed below).

F.    **ALL OF THE ATTACKS AT ISSUE IN THIS COMPLAINT WERE ACTS OF INTERNATIONAL TERRORISM THAT VIOLATED THE INTERNATIONAL LAW OF WAR**

122.    At no time relevant to this Action did the United States declare war or enact an Authorization for the Use of Military Force against Iran.

123.    At no time relevant to this Action did the United States engage in an armed conflict with the military forces of Iran, nor did Iran's military forces or their agents engage in lawful acts of war against Coalition Forces.

124.    At no time relevant to this action did the operatives of Hezbollah, the IRGC and the Special Groups who killed and injured Coalition Forces and civilians in Iraq carry fixed distinctive signs recognizable at a distance, carry arms openly, conduct their operations in accordance with the laws and customs of war, or enjoy any form of combatant immunity for their acts.

125.    The specific attacks alleged herein were all carried out by terrorists and terrorist organizations like Hezbollah and the Special Groups, with the material support of Iran and Defendants, not by armed forces of recognized governments or military forces.

126.     The deaths and injuries Plaintiffs sustained were not the result of, nor did they occur in the course of, a declared war with Iran, or an armed conflict between the United States and Iran.

127.     The conduct of Iran, the IRGC, Hezbollah and the Special Groups violated the laws of armed conflict (including, *e.g.*, AAH operatives masquerading as members of U.S. armed forces and executing defenseless prisoners), and the attacks upon Iraqi and other civilians constituted a substantial, rather than an incidental, part of their objectives and conduct.

128.     The acts of the IRGC, Hezbollah, and/or the Special Groups that injured the Plaintiffs were acts of hostage taking and extrajudicial killing as defined by 28 U.S.C. §§ 1605A(h)(2) and 1605A(h)(7), and acts of international terrorism as defined by of 18 U.S.C. § 2331.

129.     The aforesaid acts of hostage taking, extrajudicial killing and international terrorism were enabled by Defendants' provision of material support and resources as defined by 28 U.S.C. § 1605A(h)(3) and 18 U.S.C. § 2339A.

## THE PLAINTIFFS

## 1.     THE JUNE 29, 2011 ATTACK – WASIT PROVINCE

## The Field Family

130.     Plaintiff Donald Field is a citizen of the United States and domiciled in the State of Texas.

131.     On June 29, 2011, Donald Field, then 42, was serving in the U.S. military in Iraq when his unit was attacked with Improvised Rocket-Assisted Munitions deployed by Kata'ib Hezbollah.

132.     The rocket fire and one of the many explosions caused a concrete retaining wall to fall, portions of which landed on Donald Field, rendering him unconscious.

133.     When he came to, he was able to extricate himself from the debris and noticed much

of his clothing had been burned and torn.

134.    Both lower lobes of Donald Field's lungs had collapsed due to the force of the blast and the concrete wall having landed on him.

135.    He sustained injuries to his back, primarily to his lower vertebrae, requiring surgery.  He has limited motion.

136.    He has been prescribed medication to address the pain he experiences on a daily basis.

137.    As a result of the blast, Mr. Field also suffered first and second-degree burns on his head, neck, and the back of his arms.

138.    Mr. Field also injured the right side of his head and right ear.  He has experienced and continues to deal with short-term cognitive and memory issues.  He has undergone multiple surgeries to address the injuries to his head and ear.

139.    Mr. Field has been diagnosed with a traumatic brain injury ("TBI").

140.    He has sought counseling and continues to seek treatment with a psychiatrist. He has been prescribed medication for anxiety and mood-related issues.

141.    As a result of the attack, and the injuries he suffered, Donald Field has experienced severe physical and mental anguish and extreme emotional pain and suffering.

142.    Plaintiff Angelica Field is a citizen of the United States and domiciled in the State of Texas. She is the of wife of Donald Field.

143.    Plaintiff Senovia Field is a citizen of the United States and domiciled in the State of Texas. She is the of daughter of Donald Field.

144.    Plaintiff S.F., a minor, represented by her legal guardian Angelica Field, is a citizen of the United States and domiciled in the State of Texas. She is the of daughter of Donald Field.

145.    As a result of the attack, and the injuries Donald suffered, Plaintiffs Angelica Field, Senovia Field, and S.F. have experienced severe mental anguish and extreme emotional pain and suffering.

## 2.    THE APRIL 4, 2004 ATTACK – BAGHDAD

### The Arsiaga Family

146.    Robert R. Arsiaga was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

147.    On April 4, 2004, Robert R. Arsiaga, aged 25, was serving in the United States military in Iraq when his unit was attacked with rocket-propelled grenades and small-arms fire.

148.    Robert R. Arsiaga was killed in the attack.

149.    The terrorist group that planned and executed the attack, the Mahdi Army, was trained and armed by Iran's IRGC with the assistance of Hezbollah.

150.    Plaintiff Tracie Arsiaga is a citizen of the United States and domiciled in the State of Texas. She is the widow of Robert R. Arsiaga.

151.    Plaintiff Sylvia Macias is a citizen of the United States and domiciled in the State of Texas.  She is the mother of Robert R. Arsiaga.

152.    Plaintiff Gilbert Arsiaga, Jr. is a citizen of the United States and domiciled in the State of Texas.  He is the brother of Robert R. Arsiaga.

153.    Plaintiff George Arsiaga is a citizen of the United States and domiciled in the State of Texas.  He is the brother of Robert R. Arsiaga.

154.    Plaintiff Matthew Arsiaga is a citizen of the United States and domiciled in the State of Texas.  He is the brother of Robert R. Arsiaga.

155.    Plaintiff Angel Munoz is a citizen of the United States and domiciled in the State of Texas.  She is the sister of Robert R. Arsiaga.

156.    Plaintiff Robi Ann Galindo is a citizen of the United States and domiciled in the State of Texas.  She is the sister of Robert R. Arsiaga.

157.    Jeremy Arsiaga was a citizen of the United States at the time of the death of Robert R. Arsiaga. He was the brother of Robert R. Arsiaga. Jeremy Arsiaga died on September 4, 2015.

158.    Patricia Arsiaga is the surviving widow of Jeremy Arsiaga. Patricia Arsiaga brings this action on behalf of the Estate of Jeremy Arsiaga.

159.    Plaintiff Tracie Arsiaga brings an action individually and on behalf of the Estate of Robert R. Arsiaga, as its legal representative.

160.    As a result of the attack, and the death of Robert R. Arsiaga, Plaintiffs Tracie Arsiaga, Sylvia Macias, Gilbert Arsiaga, Jr., George Arsiaga, Matthew Arsiaga, Angel Munoz, Robi Ann Galindo, and Patricia Arsiaga in her capacity as the legal representative for the Estate of Jeremy Arsiaga have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

**The Cason Family**

161.    Ahmed A. Cason was a citizen of the United States and domiciled in the State of Alabama when he was killed in Iraq.

162.    On April 4, 2004, Ahmed A. Cason, aged 24, was serving in the United States military in Iraq when his unit was attacked with rocket-propelled grenades and small-arms fire.

163.    Ahmed A. Cason was killed in the attack.

164.    The terrorist group that planned and executed the attack, the Mahdi Army, was trained and armed by Iran's IRGC with the assistance of Hezbollah.

165.    Plaintiff Cedric Hunt, Sr. is a citizen of the United States and domiciled in the State of Alabama. He is the step-father of Ahmed A. Cason.

166.     As a result of the attack, and the death of Ahmed A. Cason, Plaintiff Cedric Hunt, Sr. has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his step-son's society, companionship, comfort, advice and counsel.

## 3.     THE AUGUST 5, 2004 ATTACK – NAJAF

### The Rocha Family

167.     Moses Rocha was a citizen of the United States and domiciled in the State of New Mexico when he was killed in Iraq.

168.     On August 5, 2004, Moses Rocha, aged 33, was serving in the U.S. military in Iraq when his unit was attacked with rocket-propelled grenades and small-arms fire.

169.     Moses Rocha was killed in the attack.

170.     The terrorist group that planned and executed the attack, the Mahdi Army, was trained and armed by Iran's IRGC with the assistance of Hezbollah.

171.     Plaintiff Miranda Pruitt is a citizen of the United States and domiciled in the State of Texas. She is the daughter of Moses Rocha.

172.     Plaintiff Velina Sanchez is a citizen of the United States and domiciled in the State of New Mexico. She is the mother of Moses Rocha.

173.     Plaintiff Velina Sanchez brings an action individually and on behalf of the Estate of Moses Rocha, as its legal representative.

174.     Plaintiff Aloysius Sanchez, Sr. is a citizen of the United States and domiciled in the State of New Mexico. He is the step-father of Moses Rocha.

175.     Plaintiff Rommel Rocha is a citizen of the United States and domiciled in the State of New Mexico. He is the brother of Moses Rocha.

176.     Plaintiff Phillip Sanchez is a citizen of the United States and domiciled in the State of New Mexico. He is the brother of Moses Rocha.

177.    Plaintiff Aloysius Sanchez, Jr. is a citizen of the United States and domiciled in the State of New Mexico. He is the brother of Moses Rocha.

178.    As a result of the attack, and the death of Moses Rocha, Plaintiffs Miranda Pruitt, Velina Sanchez, Aloysius Sanchez, Sr., Rommel Rocha, Phillip Sanchez, and Aloysius Sanchez, Jr. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their father's/son's/brother's society, companionship, comfort, advice and counsel.

## 4.    THE MAY 3, 2005 ATTACK – BAGHDAD

### The Bartlett Family

179.    Plaintiff Robert Bartlett is a citizen of the United States and domiciled in the State of Virginia.

180.    On May 3, 2005, Robert Bartlett, then 31, was serving in the U.S. military in Iraq.

181.    He was driving in a convoy when an EFP struck his vehicle.

182.    The weapon used to injure Mr. Bartlett was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

183.    As a result of the attack, part of Mr. Bartlett's head was severed.

184.    He also suffered third-degree burns on his neck, face and hands; internal bleeding; and a collapsed lung.

185.    Mr. Bartlett has undergone multiple surgeries, including plastic surgery on his head and his bottom lip.

186.    Mr. Bartlett nearly died on several occasions following the attack and was significantly physically impaired for several years following the attack.

187.    Mr. Bartlett suffers from post-traumatic stress disorder ("PTSD") and has constant nightmares.

188.    He has participated in group therapy to treat the emotional injuries he sustained as a result of the attack.

189.    As a result of the attack, and the injuries he suffered, Robert Bartlett has experienced severe physical and mental anguish and extreme emotional pain and suffering.

190.    Plaintiff Terrel Charles Bartlett is a citizen of the United States and domiciled in the State of Arizona. He is the father of Robert Bartlett.

191.    Plaintiff Linda Jones is a citizen of the United States and domiciled in the State of Arizona. She is the mother of Robert Bartlett.

192.    Plaintiff Shawn Bartlett is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Robert Bartlett.

193.    As a result of the attack, and the injuries Robert Bartlett suffered, Plaintiffs Terrel Charles Bartlett, Linda Jones and Shawn Bartlett have experienced severe mental anguish and extreme emotional pain and suffering.

5.    **THE JULY 3, 2005 ATTACK – BAGHDAD**

**The Montgomery Family**

194.    Ryan Montgomery was a citizen of the United States and domiciled in the State of Kentucky when he was killed in Iraq.

195.    On July 3, 2005, Ryan Montgomery, aged 22, was serving in the United States military in Iraq when an EFP detonated near his Humvee in Baghdad.

196.    Ryan Montgomery was killed in the attack.

197.    The weapon used to kill Ryan Montgomery was an Iranian-manufactured EFP provided to Iranian-funded and –trained terror operatives in Iraq.

198.    Plaintiff Raymond Montgomery is a citizen of the United States and domiciled in the State of Kentucky. He is the father of Ryan Montgomery.

199.    Plaintiff Patricia Montgomery is a citizen of the United States and domiciled in the State of Kentucky. She is the mother of Ryan Montgomery.

200.    Plaintiff Bryan Montgomery is a citizen of the United States and domiciled in the State of Kentucky. He is the brother of Ryan Montgomery.

201.    As a result of the attack, and the death of Ryan Montgomery, Plaintiffs Raymond Montgomery, Patricia Montgomery and Bryan Montgomery have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 6.    THE JULY 27, 2005 ATTACK – BAGHDAD

### The Wood Family

202.    Plaintiff Tony Wood is a citizen of the United States and domiciled in the State of Hawaii.

203.    On July 27, 2005, Tony Wood, age 38, was serving in the U.S. military in Iraq.

204.    Mr. Wood was returning to his base when his vehicle was struck by an EFP.

205.    The weapon used to injure Mr. Wood was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

206.    As a result of the attack, he sustained significant injuries due to the impact of a large amount of shrapnel that pierced his body armor.

207.    Mr. Wood received extensive medical treatment at various hospitals, where he spent a number of months.

208.    He was also in a coma for over forty (40) days and developed numerous infections that required treatment.

209.    The shrapnel affected numerous internal organs, and he underwent over 20 separate surgeries.

210.     Mr. Wood continues to experience pain and limitations to his activities each day.

211.     Mr. Wood suffers from PTSD and has experienced severe depression.

212.     He has participated in treatment programs to address his emotional problems and has been prescribed medication to address this condition.

213.     As a result of the attack, and the injuries he suffered, Tony Wood has experienced severe physical and mental anguish and extreme emotional pain and suffering.

214.     Plaintiff Joedi Wood is a citizen of the United States and domiciled in the State of Hawaii. She is the wife of Tony Wood.

215.     Plaintiff Adam Wood is a citizen of the United States and domiciled in the State of Hawaii. He is the son of Tony Wood.

216.     Plaintiff Megan Wood is a citizen of the United States and domiciled in the State of Hawaii. She is the daughter of Tony Wood.

217.     As a result of the attack, and the injuries suffered by Tony Wood, Plaintiffs Joedi Wood, Adam Wood and Megan Wood have experienced severe mental anguish, and extreme emotional pain and suffering.

**7.     THE AUGUST 2, 2005 ATTACK – BASRA**

**The Vincent Family**

218.     Steven Vincent was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

219.     On August 2, 2005, Steven Vincent, aged 49, a journalist, was reporting on the Iraqi war in Basra when he was kidnapped, taken hostage for several hours and then shot.

220.     Steven Vincent was killed in the attack.

221.     The terrorist group that planned and executed the attack was trained and armed by Iranian-backed Special Groups.

222.   Plaintiff Lisa Ramaci is a citizen of the United States and domiciled in the State of New York. She is the widow of Steven Vincent.

223.   Plaintiff Isabell Vincent is a citizen of the United States and domiciled in the State of California. She is the mother of Steven Vincent.

224.   Plaintiff Charles Vincent is a citizen of the United States and domiciled in the State of California. He is the father of Steven Vincent.

225.   Plaintiff Lisa Ramaci brings an action individually and on behalf of the Estate of Steven Vincent, as its legal representative.

226.   As a result of the attack, and the death of Steven Vincent, Plaintiffs Lisa Ramaci, Isabell Vincent and Charles Vincent have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's society, companionship, comfort, advice and counsel.

## 8.   THE SEPTEMBER 2, 2005 ATTACK – BAGHDAD

### The Hassler Family

227.   Plaintiff Tamara Hassler is a citizen of the United States and domiciled in the State of North Carolina.

228.   On September 2, 2005, Tamara Hassler, then 36, was serving as a civilian contractor for DynCorp International in Iraq when an EFP detonated near her vehicle.

229.   The weapon used to injure Tamara Hassler was an Iranian-manufactured EFP provided to Iranian-funded and-trained terror operatives in Iraq.

230.   As a result of the attack, Ms. Hassler suffered bruising in her sacroiliac joint, soft tissue damage to her piriformis muscle, and injuries to her right hip.

231.   Ms. Hassler also suffered from three bulging discs in her lower back as a result of the attack, as well as atrophied discs in her neck.

232.    Ms. Hassler was also diagnosed with hearing loss, PTSD, and a TBI.

233.    Ms. Hassler has been to numerous doctors and physical therapists for her injuries, and has been prescribed medication to treat her symptoms.

234.    As a result of the attack, and the injuries she suffered, Tamara Hassler has experienced severe physical and mental anguish and extreme emotional pain and suffering.

235.    Plaintiff Richard E. Hassler is a citizen of the United States and domiciled in the State of North Carolina.  He is the father of Tamara Hassler.

236.    Plaintiff Joanne Sue Hassler is a citizen of the United States and domiciled in the State of North Carolina.  She is the mother of Tamara Hassler.

237.    As a result of the attack, and the injuries Tamara Hassler has suffered, Plaintiffs Richard E. Hassler and Joanne Sue Hassler have experienced severe mental anguish and extreme emotional pain and suffering.

**The Huckfeldt Family**

238.    Plaintiff Scott Huckfeldt is a citizen of the United States and domiciled in the State of Arizona.

239.    On September 2, 2005, Scott Huckfeldt, then 37, was serving as a civilian contractor for DynCorp International in Iraq when an EFP detonated near his vehicle.

240.    The weapon used to injure Scott Huckfeldt was an Iranian-manufactured EFP provided to Iranian-funded and-trained terror operatives in Iraq.

241.    As a result of the attack, Scott Huckfeldt suffered injuries to his left knee.

242.    Mr. Huckfeldt was also diagnosed with PTSD.

243.    As a result of the attack, and the injuries he suffered, Scott Huckfeldt has experienced severe physical and mental anguish and extreme emotional pain and suffering.

244.     Plaintiff Kathryn Huckfeldt is a citizen of the United States and domiciled in the State of Arizona.  She is the wife of Scott Huckfeldt.

245.     Plaintiff Alisha Huckfeldt is a citizen of the United States and domiciled in the State of Arizona.  She is the daughter of Scott Huckfeldt.

246.     Plaintiff Matthew Huckfeldt is a citizen of the United States and domiciled in the State of Arizona.  He is the son of Scott Huckfeldt.

247.     As a result of the attack, and the injuries Scott Huckfeldt has suffered, Plaintiffs Kathryn Huckfeldt, Alisha Huckfeldt, and Matthew Huckfeldt have experienced severe mental anguish and extreme emotional pain and suffering.

**The Newman Family**

248.     Timothy Newman is a citizen of the United States and domiciled in the State of South Carolina.

249.     On September 2, 2005, Timothy Newman, then 41, was serving as a civilian contractor for DynCorp International in Iraq when an EFP detonated near his vehicle.

250.     The weapon used to injure Timothy Newman was an Iranian-manufactured EFP provided to Iranian-funded and-trained terror operatives in Iraq.

251.     As a result of the attack, Timothy Newman's legs were injured, and his right leg had to be amputated above the knee.

252.     Timothy Newman suffered injury to his left hand, which had to be partially amputated at the wrist.

253.     Timothy Newman received a penetrating wound to his chest and abdomen, and suffered a broken spine and various broken bones, also as a result of the attack.

254.     Timothy Newman was also diagnosed with PTSD and a TBI.

255.    As a result of the attack, and the injuries he suffered, Timothy Newman has experienced severe physical and mental anguish and extreme emotional pain and suffering.

256.    Plaintiff Padraic Newman is a citizen of the United States and domiciled in the State of South Carolina.  He is the son of Timothy Newman.

257.    As a result of the attack, and the injuries Timothy Newman has suffered, Plaintiff Padraic Newman has experienced severe mental anguish and extreme emotional pain and suffering.

**9.      THE SEPTEMBER 6, 2005 ATTACK – BAGHDAD**

**The Jonaus Family**

258.    Jude Jonaus was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

259.    On December 6, 2005, Jude Jonaus, aged 27, was serving in the United States military in Iraq when an EFP detonated near his Humvee in Baghdad.

260.    Jude Jonaus was killed in the attack.

261.    The weapon used to kill Jude Jonaus was an Iranian-manufactured EFP provided to Iranian-funded and –trained terror operatives in Iraq.

262.    Plaintiff Amenia Jonaus is a citizen of the United States and domiciled in the State of Florida.  She is the mother of Jude Jonaus.

263.    Plaintiff Gernessoit Jonaus Martin is a citizen of the United States and domiciled in the State of Florida.  He is the father of Jude Jonaus.

264.    Plaintiff Amenia Jonaus brings this action individually and on behalf of the Estate of Jude Jonaus.

265.    Plaintiff Daphnie Jonaus Martin is a citizen of the United States and domiciled in the State of Florida.  She is the sister of Jude Jonaus.

266.     Plaintiff Ricky Jonaus is a citizen of the United States and domiciled in the State of South Carolina.  He is the brother of Jude Jonaus.

267.     Plaintiff Marckendy Jonaus is a citizen of the United States and domiciled in the State of Florida.  He is the brother of Jude Jonaus.

268.     Plaintiff Claire Jonaus is a citizen of the United States and domiciled in the State of Florida.  She is the sister of Jude Jonaus.

269.     Plaintiff Sharen Jonaus Martin is a citizen of the United States and domiciled in the State of Florida.  She is the sister of Jude Jonaus.

270.     As a result of the attack, and the death of Jude Jonaus, Plaintiffs Amenia Jonaus, Gernessoit Jonaus, Daphnie Jonaus Martin, Ricky Jonaus, Marckendy Jonaus, Claire Jonaus and Sharen Jonaus Martin have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 10.     THE SEPTEMBER 28, 2005 ATTACK – UMM QASR

### The Morin Family

271.     Steve Morin, Jr. was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

272.     On September 28, 2005, Steve Morin, Jr., aged 34, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

273.     Steve Morin, Jr. was killed in the attack.

274.     The weapon used to kill Steve Morin, Jr. was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

275.     Plaintiff Gwendolyn Morin-Marentes is a citizen of the United States and domiciled in the State of Texas. She is the widow of Steve Morin, Jr.

276.     Plaintiff E.M., a minor represented by his legal guardian Gwendolyn Morin-Marentes, is a citizen of the United States and domiciled in the State of Texas. He is the son of Steve Morin, Jr.

277.     Plaintiff Audrey Morin is a citizen of the United States and domiciled in the State of Texas. She is the mother of Steve Morin, Jr.

278.     Plaintiff Steve Morin, Sr. is a citizen of the United States and domiciled in the State of Texas. He is the father of Steve Morin, Jr.

279.     Plaintiff Gwendolyn Morin-Marentes brings an action individually and on behalf of the Estate of Steve Morin, Jr., as its legal representative.

280.     As a result of the attack, and the death of Steve Morin, Jr., Plaintiffs Gwendolyn Morin-Marentes, E.M., Audrey Morin and Steve Morin, Sr. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's society, companionship, comfort, advice and counsel.

## 11.     THE OCTOBER 6, 2005 ATTACK – BAGHDAD

**The Robinson Family**

281.     Jeremiah Robinson was a citizen of the United States and domiciled in the State of Arizona when he was killed in Iraq.

282.     On October 6, 2005, Jeremiah Robinson, aged 20, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

283.     Jeremiah Robinson was killed in the attack.

284.     The weapon used to kill Jeremiah Robinson was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

285.     Plaintiff Amy Lynn Robinson is a citizen of the United States and domiciled in the State of Arizona. She is the mother of Jeremiah Robinson.

286.    Plaintiff Floyd Burton Robinson is a citizen of the United States and domiciled in the State of Arizona. He is the father of Jeremiah Robinson.

287.    Plaintiff Jacob Michael Robinson is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Jeremiah Robinson.

288.    Plaintiff Lucas William Robinson is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Jeremiah Robinson.

289.    Plaintiffs Amy Lynn Robinson and Floyd Burton Robinson bring an action individually and on behalf of the Estate of Jeremiah Robinson, as its legal representatives.

290.    As a result of the attack, and the death of Jeremiah Robinson, Plaintiffs Amy Lynn Robinson, Floyd Burton Robinson, Jacob Michael Robinson and Lucas William Robinson have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Burns Family**

291.    Alvis Burns is a citizen of the United States and domiciled in the State of Arizona.

292.    On October 6, 2005, Alvis Burns, then 41, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

293.    As a result of the blast, Alvis Burns's skull was cracked and shrapnel was lodged in his brain.

294.    Mr. Burns experienced brain swelling and he underwent brain surgery. He has been diagnosed with a TBI.

295.    Mr. Burns suffered shrapnel in his face and throughout his left arm. He also sustained hearing loss as a result of the blast.

296.    Mr. Burns fell in and out of comas and was, at times, in a vegetative state for long periods. He was fed through a feeding tube.

297.    As a result of the injuries sustained in the attack and following his many procedures, Mr. Burns has had to relearn how to swallow, eat, speak, and walk.

298.    He experiences pain in his legs and feet and uses an electric wheelchair and at times, a walker.

299.    As a result of the attack, and the injuries he suffered, Alvis Burns has experienced severe physical and mental anguish and extreme emotional pain and suffering.

300.    Plaintiff JoDee Johnson is a citizen of the United States and domiciled in the State of Arizona.  She is the sister of Alvis Burns.

301.    Plaintiff James Higgins is a citizen of the United States and domiciled in the State of Arizona.  He is the brother of Alvis Burns.

302.    Plaintiff Wendy Coleman is a citizen of the United States and domiciled in the State of Washington.  She is the sister of Alvis Burns.

303.    As a result of the attack, and the injuries Alvis Burns has suffered, Plaintiffs JoDee Johnson, James Higgins, and Wendy Coleman have experienced severe mental anguish, and extreme emotional pain and suffering.

**The Radke Family**

304.    Brian Radke is a citizen of the United States and domiciled in the State of Arizona.

305.    On October 6, 2005, Brian Radke, then 30, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

306.    As a result of the attack, Brian Radke sustained shrapnel to his body, including a piece that clipped his carotid artery.

307.    He also sustained shrapnel in his right leg and he has undergone reconstructive knee surgery.

308.    His jaw was fractured in multiple locations, and he lost his right finger.

309. His left arm was fractured in two locations, and his median nerve was severed.

310. He has undergone numerous surgical procedures, including those to address the severed nerve and to emplace rods and to apply skin grafts in his left arm.

311. He was in a coma, during which time he was fed by a feeding tube and breathed through a trach tube.

312. Mr. Radke still has pieces of shrapnel in his body, including some fragments lodged in his brain.

313. Mr. Radke's injuries have required physical therapy and occupational therapy.

314. Mr. Radke has been diagnosed with PTSD and has received treatment and counseling. He has been prescribed medication to address both the pain and emotional impact of the attack.

315. As a result of the attack, and the injuries he suffered, Brian Radke has experienced severe physical and mental anguish and extreme emotional pain and suffering.

316. Plaintiff Nova Radke is a citizen of the United States and domiciled in the State of Arizona.  She is the wife of Brian Radke.

317. As a result of the attack, and the injuries Brian Radke has suffered, Plaintiff Nova Radke has experienced severe mental anguish, and extreme emotional pain and suffering.

## 12.   THE DECEMBER 8, 2005 – BAGHDAD

### The Smith Family

318. Kevin J. Smith was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

319. On December 8, 2005, Kevin J. Smith, aged 28, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

320. Kevin J. Smith was killed in the attack.

321.    The weapon used to kill Kevin J. Smith was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

322.    Plaintiff Clifford L. Smith, Jr. is a citizen of the United States and domiciled in the State of Florida. He is the father of Kevin J. Smith.

323.    Plaintiff Georgianna Stephens-Smith is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of Kevin J. Smith.

324.    Plaintiff Ancil Streetman Stephens is a citizen of the United States and domiciled in the State of North Carolina. He is the step-father of Kevin J. Smith.

325.    Plaintiff Corena Martin is a citizen of the United States and domiciled in the State of Florida. She is the sister of Kevin J. Smith.

326.    Plaintiff Clifford L. Smith brings an action individually and on behalf of the Estate of Kevin J. Smith, as its legal representative.

327.    As a result of the attack, and the death of Kevin J. Smith, Plaintiffs Clifford L. Smith, Georgianna Stephens-Smith, Ancil Streetman Stephens and Corena Martin have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 13.    THE JANUARY 5, 2006 ATTACK – NAJAF

### The Hecker Family

328.    William F. Hecker, III was a citizen of the United States and domiciled in the State of Missouri when he was killed in Iraq.

329.    On January 5, 2006, William F. Hecker, III, aged 37, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

330.    William F. Hecker, III was killed in the attack.

331.    The weapon used to kill William F. Hecker, III was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

332.    Plaintiff William F. Hecker, Jr. is a citizen of the United States and domiciled in the State of Colorado. He is the father of William F. Hecker, III.

333.    Plaintiff Nancy Hecker is a citizen of the United States and domiciled in the State of Colorado. She is the mother of William F. Hecker, III.

334.    Plaintiff John D. Hecker is a citizen of the United States and domiciled in the State of New York. He is the brother of William F. Hecker, III.

335.    As a result of the attack, and the death of William F. Hecker, III, Plaintiffs William F. Hecker, Jr., Nancy Hecker, and John D. Hecker have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Mariano Family**

336.    Robbie M. Mariano was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

337.    On January 5, 2006, Robbie M. Mariano, aged 21, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

338.    Robbie M. Mariano was killed in the attack.

339.    The weapon used to kill Robbie M. Mariano was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

340.    Plaintiff Robert F. Mariano is a citizen of the United States and domiciled in the State of California. He is the father of Robbie M. Mariano.

341.    Plaintiff Debra Mariano is a citizen of the United States and domiciled in the State of California. She is the mother of Robbie M. Mariano.

342.     Plaintiff Bobbie Mariano is a citizen of the United States and domiciled in the State of California. He is the brother of Robbie M. Mariano.

343.     Plaintiff Robert F. Mariano brings an action individually and on behalf of the Estate of Robbie M. Mariano, as its legal representative.

344.     As a result of the attack, and the death of Robbie M. Mariano, Plaintiffs Robert F. Mariano, Debra Mariano and Bobbie Mariano have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The White Family**

345.     Stephen J. White was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

346.     On January 5, 2006, Stephen J. White, aged 39, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

347.     Stephen J. White was killed in the attack.

348.     The weapon used to kill Stephen J. White was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

349.     Plaintiff Vickie Michay White is a citizen of the United States and domiciled in the State of Texas. She is the widow of Stephen J. White.

350.     Plaintiff Vickie Michay brings an action individually and on behalf of the Estate of Stephen J. White, as its personal representative.

351.     As a result of the attack, and the death of Stephen J. White, Plaintiff Vickie Michay White has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her husband's society, companionship, comfort, advice and counsel.

14.     **THE FEBRUARY 18, 2006 ATTACK – BAGHDAD**

**The Matheny Family**

352.    Charles E. Matheny, IV was a citizen of the United States and domiciled in the State of Washington when he was killed in Iraq.

353.    On February 18, 2006, Charles E. Matheny, IV, aged 23, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

354.    Charles E. Matheny, IV was killed in the attack.

355.    The weapon used to kill Charles E. Matheny, IV was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

356.    Plaintiff Deborah Noble is a citizen of the United States and domiciled in the State of Texas. She is the mother of Charles E. Matheny, IV.

357.    Plaintiff David Noble is a citizen of the United States and domiciled in the State of Texas. He is the step-father of Charles E. Matheny, IV.

358.    Plaintiff Charles E. Matheny, III is a citizen of the United States and domiciled in the State of Washington. He is the father of Charles E. Matheny, IV.

359.    Plaintiff Deborah Noble brings an action individually and on behalf of the Estate of Charles E. Matheny, IV, as its legal representative.

360.    As a result of the attack, and the death of Charles E. Matheny, IV, Plaintiffs Deborah Noble, David Noble and Charles E. Matheny, III have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

15.   **THE FEBRUARY 26, 2006 ATTACK – BAGHDAD**

**The Farr Family**

361.   Clay P. Farr was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

362.   On February 26, 2006, Clay P. Farr, aged 21, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

363.   Clay P. Farr was killed in the attack.

364.   The weapon used to kill Clay P. Farr was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

365.   Plaintiff Patrick Farr is a citizen of the United States and domiciled in the State of California. He is the father of Clay P. Farr.

366.   Plaintiff Silver Farr is a citizen of the United States and domiciled in the State of California. She is the step-mother of Clay P. Farr.

367.   Plaintiff Carrol Alderete is a citizen of the United States and domiciled in the State of California. She is the mother of Clay P. Farr.

368.   Plaintiff Anthony Alderete is a citizen of the United States and domiciled in the State of California. He is the step-father of Clay P. Farr.

369.   Plaintiff Chad Farr is a citizen of the United States and domiciled in the State of California. He is the brother of Clay P. Farr.

370.   Plaintiff Patrick Farr brings an action individually and on behalf of the Estate of Clay P. Farr, as its legal representative.

371.   As a result of the attack, and the death of Clay P. Farr, Plaintiffs Patrick Farr, Silver Farr, Carrol Alderete, Anthony Alderete and Chad Farr have experienced severe mental anguish,

extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Hunter Family**

372.     Wesley Hunter was a citizen of the United States and domiciled in the State of New York when he was injured in Iraq.

373.     On February 26, 2006, Wesley Hunter, aged 26, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

374.     Wesley Hunter was injured in the attack, and he died on September 18, 2008 from the injuries he sustained in the attack.

375.     The weapon used to kill Wesley Hunter was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

376.     Plaintiff Rayanne Hunter is a citizen of the United States and domiciled in the State of North Carolina. She is the widow of Wesley Hunter.

377.     Plaintiff W.H., a minor represented by his legal guardian Rayanne Hunter, is a citizen of the United States and domiciled in the State of North Carolina. He is the son of Wesley Hunter.

378.     Plaintiff T.H., a minor represented by her legal guardian Rayanne Hunter, is a citizen of the United States and domiciled in the State of North Carolina. She is the daughter of Wesley Hunter.

379.     Plaintiff Rayanne Hunter brings an action individually and on behalf of the Estate of Wesley Hunter, as its legal representative.

380.     As a result of the attack, and the death of Wesley Hunter, Plaintiffs Rayanne Hunter, W.H. and T.H. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

16.    **THE MARCH 13, 2006 ATTACK – RUSTAMIYAH**

**The Lewis Family**

381.    Bryan A. Lewis was a citizen of the United States and domiciled in the State of Louisiana when he was killed in Iraq.

382.    On March 13, 2006, Bryan A. Lewis, aged 32, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

383.    Bryan A. Lewis was killed in the attack.

384.    The weapon used to kill Bryan A. Lewis was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

385.    Plaintiff Fabersha Flynt Lewis is a citizen of the United States and domiciled in the State of Georgia. She is the widow of Bryan A. Lewis.

386.    As a result of the attack, and the death of Bryan A. Lewis, Plaintiff Fabersha Flynt Lewis has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her husband's society, companionship, comfort, advice and counsel.

17.    **THE APRIL 1, 2006 ATTACK – BAGHDAD**

**The Devora-Garcia Family**

387.    Israel Devora-Garcia was domiciled in the State of Texas when he was killed in Iraq. He became a citizen of the United States posthumously.

388.    On April 1, 2006, Israel Devora-Garcia, aged 23, was serving in the U.S. military in Iraq when an EFP detonated while he was conducting a dismounted patrol.

389.    Israel Devora-Garcia was killed in the attack.

390.    The weapon used to kill Israel Devora-Garcia was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

391.     Plaintiff Lorenzo Sandoval, Sr. is a citizen of the United States and domiciled in the State of Texas. He is the father of Israel Devora-Garcia.

392.     Plaintiff Lorenzo Sandoval, Sr. brings an action individually and on behalf of the Estate of Israel Devora-Garcia, as its legal representative.

393.     Plaintiff Lorenzo Sandoval, Jr. is a citizen of the United States and domiciled in the State of Texas. He is the brother of Israel Devora-Garcia.

394.     As a result of the attack, and the death of Israel Devora-Garcia, Plaintiffs Lorenzo Sandoval, Sr. and Lorenzo Sandoval, Jr. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 18.     **THE APRIL 12, 2006 ATTACK – BAGHDAD**

**The Bandhold Family**

395.     Scott Bandhold was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

396.     On April 12, 2006, Scott Bandhold, aged 37, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

397.     Scott Bandhold was killed in the attack.

398.     The weapon used to kill Scott Bandhold was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

399.     Plaintiff Henry J. Bandhold is a citizen of the United States and domiciled in the State of Florida. He is the father of Scott Bandhold.

400.     Plaintiff Afonso Bandhold is a citizen of the United States and domiciled in Portugal. He is the son of Scott Bandhold.

401.   Plaintiff Mariana Bandhold is a citizen of the United States and domiciled in Portugal. She is the daughter of Scott Bandhold.

402.   Plaintiff H. Joseph Bandhold is a citizen of the United States and domiciled in the State of New York. He is the brother of Scott Bandhold.

403.   Plaintiff Donald C. Bandhold is a citizen of the United States and domiciled in the State of Virginia. He is the brother of Scott Bandhold.

404.   Plaintiff Henry J. Bandhold brings an action individually and on behalf of the Estate of Scott Bandhold, as its legal representative.

405.   As a result of the attack, and the death of Scott Bandhold, Plaintiffs Henry J. Bandhold, Afonso Bandhold, Mariana Bandhold, H. Joseph Bandhold and Donald C. Bandhold have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/father's/brother's society, companionship, comfort, advice and counsel.

## 19.   THE APRIL 25, 2006 ATTACK – SADR CITY

### The Murphy Family

406.   Plaintiff Luke Murphy is a citizen of the United States and domiciled in the State of Florida.

407.   On April 25, 2006, Luke, then 24, was serving in the U.S. military in Iraq.

408.   He was driving in a convoy when an EFP struck his vehicle.

409.   The weapon used to injure Mr. Murphy was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

410.   The explosive charge passed through Mr. Murphy's right leg, amputating it. Portions of his left leg muscles were destroyed and he sustained a compound fracture of his left tibia and fibula, rendering his left leg useless.  Smoke began filling the inside of the vehicle.

411.    The vehicle ultimately crashed into a wall and Mr. Murphy eventually found a way to exit the vehicle. He crawled on the ground, dragging the remaining stump of his right leg and injured left leg while he continued to experience significant blood loss.

412.    Mr. Murphy has undergone over 30 procedures to address the injuries sustained in the attack, including those involving the additional shortening of the stump of his right leg and issues involving the problems that have developed with his left leg and foot.

413.    Mr. Murphy has been prescribed anti-depressants and medication to assist with sleep issues.

414.    As a result of the attack, and the injuries he suffered, Luke Murphy has experienced severe physical and mental anguish and extreme emotional pain and suffering.

415.    Plaintiff Willette Murphy is a citizen of the United States and domiciled in the State of Florida. She is the mother of Luke Murphy.

416.    As a result of the attack, and the injuries Luke Murphy suffered, Willette Murphy has experienced severe mental anguish and extreme emotional pain and suffering.

**The Roberts Family**

417.    Plaintiff Erik Roberts is a citizen of the United States and domiciled in the State of Tennessee.

418.    On April 25, 2006, Erik Roberts, then 22, was serving in the U.S. military in Iraq.

419.    He was driving in a convoy when an EFP struck his vehicle.

420.    The weapon used to injure Mr. Roberts was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

421.    Mr. Roberts' right femur was severed.

422.    He had had more than one dozen surgeries to treat his right femur and has suffered numerous infections.

423.    As a result of the attack, and the injuries he suffered, Erik Roberts has experienced severe physical and mental anguish and extreme emotional pain and suffering.

424.    Plaintiff E.C.R., a minor, represented by her legal representative Erik Roberts, is a citizen of the United States and domiciled in the State of Tennessee. She is the daughter of Erik Roberts.

425.    Plaintiff Robin Roberts is a citizen of the United States and domiciled in the State of Tennessee. She is the mother of Erik Roberts.

426.    Plaintiff James Craig Roberts is a citizen of the United States and domiciled in the State of Ohio. He is the father of Erik Roberts.

427.    Plaintiff Cara Roberts is a citizen of the United States and domiciled in the State of Tennessee. She is the sister of Erik Roberts.

428.    Plaintiff Colin Roberts is a citizen of the United States and domiciled in the State of Tennessee. He is the brother of Erik Roberts.

429.    As a result of the attack, and the injuries Erik Roberts suffered, Plaintiffs E.C.R., Robin Roberts, James Craig Roberts, Cara Roberts and Colin Roberts have experienced severe mental anguish and extreme emotional pain and suffering.

## 20.    THE APRIL 28, 2006 ATTACK – BAGHDAD

### The Gomez Family

430.    Jose Gomez was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

431.    On April 28, 2006, Jose Gomez, aged 23, was serving in the United States military in Iraq when an EFP detonated near his Humvee in Baghdad.

432.    Jose Gomez was killed in the attack.

433.    The weapon used to kill Jose Gomez was an Iranian-manufactured EFP provided to Iranian-funded and –trained terror operatives in Iraq.

434.    Plaintiff Maria Gomez is a citizen of the United States and domiciled in the State of New York. She is the mother of Jose Gomez.

435.    Plaintiff Maria Gomez brings an action individually and on behalf of the Estate of Jose Gomez, as its legal representative.

436.    As a result of the attack, and the death of Jose Gomez, Plaintiff Maria Gomez has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

## 21.    THE MAY 5, 2006 ATTACK – BAGHDAD

### The Saenz Family

437.    Carlos N. Saenz was a citizen of the United States and domiciled in the State of Nevada when he was killed in Iraq.

438.    On May 5, 2006, Carlos N. Saenz, aged 46, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

439.    Carlos N. Saenz was killed in the attack.

440.    The weapon used to kill Carlos N. Saenz was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

441.    Plaintiff Nanette Saenz is a citizen of the United States and domiciled in the State of Nevada. She is the widow of Carlos N. Saenz.

442.    Plaintiff Juan Saenz is a citizen of the United States and domiciled in the State of Nevada. He is the son of Carlos N. Saenz.

443.    Plaintiff Nanette Saenz brings an action individually and on behalf of the Estate of Carlos N. Saenz, as its legal representative.

444.    Plaintiff Joaqina Saenz Chorens is a citizen of the United States and domiciled in the State of Nevada. She is the mother of Carlos N. Saenz.

445.    Plaintiff Luz Maria Estrada is a citizen of the United States and domiciled in the State of Nevada. She is the sister of Carlos N. Saenz.

446.    Plaintiff Frances Catherine Castro is a citizen of the United States and domiciled in the State of Nevada. She is the sister of Carlos N. Saenz.

447.    Plaintiff Elva Espinoza is a citizen of the United States and domiciled in the State of Nevada. She is the sister of Carlos N. Saenz.

448.    As a result of the attack, and the death of Carlos N. Saenz, Plaintiffs Nanette Saenz, Juan Saenz, Joaqina Saenz Chorens, Luz Maria Estrada, Frances Catherine Castro and Elva Espinoza have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

**The Vacho Family**

449.    Nathan J. Vacho was a citizen of the United States and domiciled in the State of Wisconsin when he was killed in Iraq.

450.    On May 5, 2006, Nathan J. Vacho, aged 29, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

451.    Nathan J. Vacho was killed in the attack.

452.    The weapon used to kill Nathan J. Vacho was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

453.    Plaintiff John Vacho is a citizen of the United States and domiciled in the State of Wisconsin. He is the father of Nathan J. Vacho.

454.    Plaintiff Ashley Vacho Leslie is a citizen of the United States and domiciled in the State of Wisconsin. She is the sister of Nathan J. Vacho.

455.     Carol Vacho was a citizen of the United States at the time of the death of Nathan J. Vacho. She was the mother of Nathan J. Vacho. She died on November 9, 2013.

456.     Plaintiff John Vacho brings an action individually and on behalf of the Estate of Carol Vacho, as its legal representative.

457.     Plaintiff John Vacho also brings an action on behalf of the Estate of Nathan J. Vacho, as its legal representative.

458.     As a result of the attack, and the death of Nathan J. Vacho, Plaintiffs John Vacho and Ashley Vacho Leslie have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 22.     THE MAY 14, 2006 ATTACK – BAGHDAD

### The Engeman Family

459.     John W. Engeman was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

460.     On May 14, 2006, John W. Engeman, aged 45, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

461.     John W. Engeman was killed in the attack.

462.     The weapon used to kill John W. Engeman was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

463.     Plaintiff Donna Engeman is a citizen of the United States and domiciled in the State of Texas. She is the widow of John W. Engeman.

464.     Plaintiff Donna Engeman brings an action individually and on behalf of the Estate of John W. Engeman, as its legal representative.

465.    As a result of the attack, and the death of John W. Engeman, Plaintiff Donna Engeman has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her husband's society, companionship, comfort, advice and counsel.

**The West Family**

466.    Robert H. West was a citizen of the United States and domiciled in the State of Ohio when he was killed in Iraq.

467.    On May 14, 2006, Robert H. West, aged 37, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

468.    Robert H. West was killed in the attack.

469.    The weapon used to kill Robert H. West was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

470.    Plaintiff Jeanette West is a citizen of the United States and domiciled in the State of Colorado. She is the widow of Robert H. West.

471.    Plaintiff Shelby West is a citizen of the United States and domiciled in the State of Colorado. She is the daughter of Robert H. West.

472.    Plaintiff Jeanette West brings an action individually and on behalf of the Estate of Robert H. West, as its legal representative.

473.    As a result of the attack, and the death of Robert H. West, Plaintiffs Jeanette West and Shelby West have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

## 23.    THE JUNE 5, 2006 ATTACK – BAGHDAD

**The Lawson Family**

474.    Isaac S. Lawson was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

475.     On June 5, 2006, Isaac S. Lawson, aged 35, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

476.     Isaac S. Lawson was killed in the attack.

477.     The weapon used to kill Isaac S. Lawson was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

478.     Plaintiff Suzzettee Lawson is a citizen of the United States and domiciled in the State of California. She is the widow of Isaac S. Lawson.

479.     Plaintiff C.L., a minor represented by her legal guardian Suzzettee Lawson, is a citizen of the United States and domiciled in the State of California. She is the daughter of Isaac S. Lawson.

480.     Plaintiff Suzzettee Lawson brings an action individually and on behalf of the Estate of Isaac S. Lawson, as its legal representative.

481.     As a result of the attack, and the death of Isaac S. Lawson, Plaintiffs Suzzettee Lawson and C.L. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Eastlund Family**

482.     Plaintiff Arne Eastlund is a citizen of the United States and domiciled in the State of California.

483.     On June 5, 2006, Arne Eastlund, age 45, was serving in the U.S. military in Iraq, when his vehicle was struck by an EFP.

484.     At the time of the attack, Arne Eastlund was the driver of the vehicle in which Isaac Lawson was a passenger (the "Lawson vehicle").

485.     The weapon used to injure Mr. Eastlund was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

486.     Following the attack, pieces of Isaac Lawson's flesh had landed on Mr. Eastlund's lap.

487.     As a result of the attack, Mr. Eastlund sustained significant injuries to his back.

488.     He also sustained buns to his body and has suffered hearing loss.

489.     He has undergone multiple surgeries and procedures to address the injuries to his back. He continues to seek treatment for his back and neck.

490.     Mr. Eastlund has been diagnosed with a TBI and PTSD.

491.     As a result of the attack, and the injuries he suffered, Arne Eastlund has experienced severe physical and mental anguish and extreme emotional pain and suffering.

492.     Plaintiff Tina Eastlund is a citizen of the United States and domiciled in the State of California. She is the wife of Arne Eastlund.

493.     Plaintiff Sven Eastlund is a citizen of the United States and domiciled in the State of California. He is the son of Arne Eastlund.

494.     Plaintiff Taylor Eastlund is a citizen of the United States and domiciled in the State of California. She is the step-daughter of Arne Eastlund.

495.     Plaintiff Elizabeth Jo Eastlund is a citizen of the United States and domiciled in the State of California. She is the mother of Arne Eastlund.

496.     As a result of the attack, and the injuries Arne Eastlund suffered, Plaintiffs Tina Eastlund, Sven Eastlund, Taylor Eastlund, and Elizabeth Jo Eastlund have experienced severe mental anguish and extreme emotional pain and suffering.

**The Adamson Family**

497.     Plaintiff Matthew Adamson is a citizen of the United States and domiciled in the State of Oklahoma.

498.     On June 5, 2006, Matthew Adamson, age 21, was serving in the U.S. military in Iraq.

499.     Matthew Adamson was the gunner in a vehicle ("the Adamson vehicle") that was traveling in the same convoy as the Lawson vehicle when the Lawson vehicle was struck by an EFP.

500.     As a result of the explosion, Mr. Adamson was thrown back, injuring his head.

501.     The weapon used to injure Mr. Adamson was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

502.     Mr. Adamson has experienced frequent and severe headaches. He also experiences memory loss.

503.     Mr. Adamson has been diagnosed with a modified TBI.

504.     He has also been diagnosed with PTSD.

505.     Mr. Adamson has sought counseling and has been prescribed medication, including anti-depressants, to treat his condition.

506.     As a result of the attack, and the injuries he suffered, Matthew Adamson has experienced severe physical and mental anguish and extreme emotional pain and suffering.

507.     Plaintiff R.A., a minor represented by his legal guardian Matthew Adamson, is a citizen of the State of Oklahoma.

508.     Plaintiff Kathy Adamson is a citizen of the United States and domiciled in the State of Oklahoma. She is the mother of Matthew Adamson.

509.     Plaintiff Richard Adamson is a citizen of the United States and domiciled in the State of Oklahoma. He is the father of Matthew Adamson.

510.     Plaintiff Christopher Adamson is a citizen of the United States and domiciled in the State of Oklahoma. He is the brother of Matthew Adamson.

511.    Plaintiff Jeffrey Adamson is a citizen of the United States and domiciled in the State of Oklahoma. He is the brother of Matthew Adamson.

512.    Plaintiff Justin Adamson is a citizen of the United States and domiciled in the State of Oklahoma. He is the brother of Matthew Adamson.

513.    As a result of the attack, and the injuries Matthew Adamson suffered, Plaintiffs R.A., Kathy Adamson, Richard Adamson, Christopher Adamson, Jeffrey Adamson, and Justin Adamson have experienced severe mental anguish and extreme emotional pain and suffering.

**The Shepard Family**

514.    Plaintiff James Shepard is a citizen of the United States and domiciled in the State of Oklahoma.

515.    On June 5, 2006, James Shepard, age 32, was serving in the U.S. military in Iraq.

516.    James Shepard was the Truck Commander of the Adamson vehicle, that was traveling in the same convoy as the Lawson vehicle when the Lawson vehicle was struck by an EFP.

517.    The weapon used to injure Mr. Shepard was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

518.    Following the attack, the Adamson vehicle traveled towards the location where the Lawson vehicle had stopped.

519.    After exiting his vehicle, James Shepard went to the Lawson vehicle and opened the door. There, he saw Isaac Lawson moving, despite the fact that there were pieces of Lawson's face or neck visible in the interior of the vehicle.

520.    James Shepard helped to remove Isaac Lawson from the vehicle.

521.    James Shepard continues to vividly recall the attack and his actions as well as what he witnessed following the attack.

522.    Mr. Shepard has experienced extreme survivor's guilt.

523.    He has been diagnosed with PTSD and has sought counseling.

524.    As a result of the attack, and the injuries he suffered, James Shepard has experienced severe mental anguish and extreme emotional pain and suffering.

**The Sklaney Family**

525.    Plaintiff John P. Sklaney, III is a citizen of the United States and domiciled in the State of Oklahoma.

526.    On June 5, 2006, John Sklaney, age 35, was serving in the U.S. military in Iraq. He was the driver of the Adamson vehicle, traveling in the same convoy when the Lawson vehicle was struck by an EFP.

527.    The weapon used to injure Mr. Sklaney was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

528.    Following the attack, the Adamson vehicle traveled towards the location where the Lawson vehicle had stopped.

529.    After exiting his vehicle, John P. Sklaney, III went to the Lawson vehicle. He saw Isaac Lawson, including the fact that Isaac Lawson's leg had been severed.

530.    Together with James Shepard, John P. Sklaney, III removed Isaac Lawson from the vehicle. Mr. Sklaney helped to place Isaac Lawson on a stretcher.

531.    Mr. Sklaney has experienced survivor's guilt.

532.    He has experienced memory loss and has been diagnosed with PTSD.

533.    Mr. Sklaney has sought counseling and has been prescribed medication to treat depression.

534.    As a result of the attack, and the injuries he suffered, John P. Sklaney, III has experienced severe mental anguish and extreme emotional pain and suffering.

**24.**   **THE JUNE 8, 2006 ATTACK – AL KUT**

**The Crabtree Family**

535.   Daniel Crabtree was a citizen of the United States and domiciled in the State of Ohio when he was killed in Iraq.

536.   On June 8, 2006, Daniel Crabtree, aged 31, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

537.   Daniel Crabtree was killed in the attack.

538.   The weapon used to kill Daniel Crabtree was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

539.   Plaintiff Kathy Stillwell is a citizen of the United States and domiciled in the State of Ohio. She is the widow of Daniel Crabtree.

540.   Plaintiff M.C., a minor represented by her legal guardian, Kathy Stillwell, is a citizen of the United States and domiciled in the State of Ohio. She is the daughter of Daniel Crabtree.

541.   Plaintiff Kathy Stillwell brings an action individually and on behalf of the Estate of Daniel Crabtree.

542.   Plaintiff Judy Ann Crabtree is a citizen of the United States and domiciled in the State of Georgia. She is the mother of Daniel Crabtree.

543.   Plaintiff Ronald Wayne Crabtree is a citizen of the United States and domiciled in the State of Ohio. He is the father of Daniel Crabtree.

544.   Plaintiff Debra Wigbels is a citizen of the United States and domiciled in the State of Georgia. She is the sister of Daniel Crabtree.

545.   Plaintiff Ronald William Crabtree is a citizen of the United States and domiciled in the State of Ohio. He is the brother of Daniel Crabtree.

546.     As a result of the attack, and the death of Daniel Crabtree, Plaintiffs Kathy Stillwell, M.C., Judy Ann Crabtree, Ronald Wayne Crabtree, Debra Wigbels and Ronald William Crabtree have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

## 25.     THE JUNE 9, 2006 ATTACK – DIWANIYAH

### The Slaven Family

547.     Benjamin J. Slaven was a citizen of the United States and domiciled in the State of Nebraska when he was killed in Iraq.

548.     On June 9, 2006, Benjamin J. Slaven aged 22, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

549.     Benjamin J. Slaven was killed in the attack.

550.     The weapon used to kill Benjamin J. Slaven was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

551.     Plaintiff Judy Huenink is a citizen of the United States and domiciled in the State of Nebraska. She is the mother of Benjamin J. Slaven.

552.     Plaintiff Sean Slaven is a citizen of the United States and domiciled in the State of Nebraska. He is the brother of Benjamin J. Slaven.

553.     Plaintiff Chastity Dawn Laflin is a citizen of the United States and domiciled in the State of Nebraska. She is the sister of Benjamin J. Slaven.

554.     Plaintiff Nicole Landon is a citizen of the United States and domiciled in the State of Nebraska. She is the sister of Benjamin J. Slaven.

555.     Plaintiff Misti Fisher is a citizen of the United States and domiciled in the State of Nebraska. She is the sister of Benjamin J. Slaven.

556.   Plaintiff Judy Huenink brings an action individually and on behalf of the Estate of Benjamin J. Slaven, as its legal representative.

557.   As a result of the attack, and the death of Benjamin J. Slaven, Plaintiffs Judy Huenink, Sean Slaven, Chastity Dawn Laflin, Nicole Landon and Misti Fisher have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 26.   THE JULY 11, 2006 ATTACK – KARBALA

**The Derise Family**

558.   Philip Alan Derise is a citizen of the United States and domiciled in the State of Washington.

559.   On July 11, 2006, Philip Alan Derise, then 26, was serving in the United States military in Iraq.

560.   Mr. Derise was seated in the front passenger position of the lead Humvee in a convoy headed toward Karbala when an EFP detonated near his vehicle.

561.   The weapon used to injure Philip Alan Derise was an Iranian-manufactured EFP provided to Iranian-funded and-trained terror operatives in Iraq.

562.   As a result of the attack, Philip Alan Derise suffered vision and hearing loss, and cervical and lumbar strain.

563.   Mr. Derise was also diagnosed with a concussion, a TBI, and PTSD.

564.   As a result of the attack, and the injuries he suffered, Philip Alan Derise has experienced severe physical and mental anguish and extreme emotional pain and suffering.

27.    **THE OCTOBER 17, 2006 ATTACK – BAQUBAH**

**The Frigo Family**

565.    Nathan J. Frigo was a citizen of the United States and domiciled in the State of Indiana when he was killed in Iraq.

566.    On October 17, 2006, Nathan J. Frigo, aged 23, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

567.    Nathan J. Frigo was killed in the attack.

568.    The weapon used to kill Nathan J. Frigo was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

569.    Plaintiff Fred Frigo is a citizen of the United States and domiciled in the State of Indiana. He is the father of Nathan J. Frigo.

570.    As a result of the attack, and the death of Nathan J. Frigo, Plaintiff Fred Frigo has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his son's society, companionship, comfort, advice and counsel.

**The Haupt Family**

571.    Ryan Haupt was a citizen of the United States and domiciled in the State of Arizona when he was killed in Iraq.

572.    On October 17, 2006, Ryan Haupt, aged 24, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

573.    Ryan Haupt was killed in the attack.

574.    The weapon used to kill Ryan Haupt was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

575.    Plaintiff Nannette Byrne-Haupt is a citizen of the United States and domiciled in the State of Colorado. She is the widow of Ryan Haupt.

576.    Plaintiff Lynn Forehand is a citizen of the United States and domiciled in the State of Tennessee. She is the mother of Ryan Haupt.

577.    Plaintiff Lance Haupt is a citizen of the United States and domiciled in the State of Arizona. He is the father of Ryan Haupt.

578.    Plaintiff Rhonda Haupt is a citizen of the United States and domiciled in the State of California. She is the sister of Ryan Haupt.

579.    Plaintiff Tifany Haupt Thompson is a citizen of the United States and domiciled in the State of California. She is the sister of Ryan Haupt.

580.    Plaintiff Sabrina Cumbe is a citizen of the United States and domiciled in the State of California. She is the sister of Ryan Haupt.

581.    As a result of the attack, and the death of Ryan Haupt, Plaintiffs Nannette Byrne-Haupt, Lynn Forehand, Lance Haupt, Rhonda Haupt, Tifany Haupt Thompson and Sabrina Cumbe have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

## 28.    THE OCTOBER 20, 2006 ATTACK – BAGHDAD

### The Witte Family

582.    Kevin M. Witte was a citizen of the United States and domiciled in the State of Minnesota when he was killed in Iraq.

583.    On October 20, 2006, Kevin M. Witte, aged 27, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

584.    Kevin M. Witte was killed in the attack.

585.    The weapon used to kill Kevin M. Witte was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

66

586.     Plaintiff William Witte is a citizen of the United States and domiciled in the State of Oregon. He is the brother of Kevin M. Witte.

587.     Plaintiff William Witte brings an action individually and on behalf of the Estate of Kevin M. Witte.

588.     As a result of the attack, and the death of Kevin M. Witte, Plaintiff William Witte has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his brother's society, companionship, comfort, advice and counsel.

## 29.     THE OCTOBER 22, 2006 ATTACK – BAGHDAD

### The Mock Family

589.     Willsun Mock was a citizen of the United States and domiciled in the State of Kansas when he was killed in Iraq.

590.     On October 22, 2006, Willsun Mock, aged 23, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

591.     Willsun Mock was killed in the attack.

592.     The weapon used to kill Willsun Mock was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

593.     Plaintiff Michael Mock is a citizen of the United States and domiciled in the State of Kansas. He is the father of Willsun Mock.

594.     Plaintiff Tammy Dorsey is a citizen of the United States and domiciled in the State of Kansas. She is the sister of Willsun Mock.

595.     As a result of the attack, and the death of Willsun Mock, Plaintiffs Michael Mock and Tammy Dorsey have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**30.**     **THE OCTOBER 22, 2006 ATTACK – BAGHDAD**

**The Brian Family**

596.     Brian Brian was a citizen of the United States and domiciled in the State of Arkansas when he was killed in Iraq.

597.     On October 22, 2006, Brian Brian, then 59, was serving as a civilian contractor for DynCorp International in Iraq when an EFP detonated near his vehicle.

598.     The weapon used to kill Brian Brian was an Iranian-manufactured EFP provided to Iranian-funded and –trained terror operatives in Iraq.

599.     Plaintiff Amber Hensley is a citizen of the United States and domiciled in the State of North Dakota. She is the daughter of Brian Brian.

600.     As a result of the attack, and the death of Brian Brian, Plaintiff Amber Hensley has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her father's society, companionship, comfort, advice and counsel.

**31.**     **THE OCTOBER 22, 2006 ATTACK – BAGHDAD**

**The Haines Family**

601.     Plaintiff David W. Haines is a citizen of the United States and domiciled in the State of Kentucky.

602.     On October 22, 2006, David W. Haines, then 41, was serving in the U.S. military in Iraq.

603.     Mr. Haines was a member of a mounted patrol conducting a route reconnaissance to the military hospital in Baghdad when an EFP struck his vehicle.

604.     The weapon used to injure Mr. Haines was an Iranian-manufactured EFP provided to Iranian-funded and -trained operatives in Iraq.

605.     As a result of the attack, Mr. Haines sustained a fracture of his right femur that resulted in his right and left legs being different lengths; shrapnel injuries to his right hand, left arm, right leg, and buttocks; burns to his body; and nerve damage.

606.     He has undergone multiple surgeries to repair the fracture to his femur and had multiple skin grafts.

607.     As a result of the nerve damage that he incurred, Mr. Haines continues to experience limited mobility in his left arm and hand and sensation problems.

608.     He has been diagnosed with PTSD and has sought counseling for emotional injuries resulting from the attack.

609.     As a result of the attack, and the injuries he suffered, David W. Haines has experienced severe physical and mental anguish and extreme emotional pain and suffering.

610.     Plaintiff Dawn Haines is a citizen of the United States and domiciled in the State of Kentucky. She is the wife of David W. Haines.

611.     Plaintiff C.H., a minor represented by his legal guardian Dawn Haines, is a citizen of the United States and domiciled in the State of Kentucky. He is the son of David W. Haines.

612.     Plaintiff Mackenzie Haines is a citizen of the United States and domiciled in the State of Kentucky. She is the sister of David W. Haines.

613.     As a result of the attack, and the injuries suffered by David W. Haines, Plaintiffs Dawn Haines, C.H. and Mackenzie Haines have experienced severe mental anguish, and extreme emotional pain and suffering.

## 32.     **THE OCTOBER 23, 2006 ATTACK – BAGHDAD**

### **The Bock Family**

614.     Amos Bock was a citizen of the United States and domiciled in the State of Missouri when he was killed in Iraq.

615.    On October 23, 2006, Amos Bock, aged 24, was serving in the United States military in Iraq when an EFP detonated near his vehicle.

616.    Amos Bock was killed in the attack.

617.    The weapon used to kill Amos Bock was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

618.    Plaintiff Harry Riley Bock is a citizen of the United States and domiciled in the State of Missouri. He is the father of Amos Bock.

619.    Plaintiff Jill Ann Bock is a citizen of the United States and domiciled in the State of Missouri. She is the mother of Amos Bock.

620.    Plaintiff Mariah Simoneaux is a citizen of the United States and domiciled in the State of Louisiana.  She is the sister of Amos Bock.

621.    As a result of the attack, and the death of Amos Bock, Plaintiffs Harry Riley Bock, Jill Ann Bock, and Mariah Simoneaux have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 33.    THE NOVEMBER 2, 2006 ATTACK – BAGHDAD

### The Kruger Family

622.    Eric Kruger was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

623.    On November 2, 2006, Eric Kruger, aged 44, was serving in the United States military in Iraq when an EFP detonated near his vehicle.

624.    Eric Kruger was killed in the attack.

625.    The weapon used to kill Eric Kruger was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

626.    Plaintiff Lawrence Kruger is a citizen of the United States and domiciled in the State of Texas. He is the father of Eric Kruger.

627.    Plaintiff Carol Kruger is a citizen of the United States and domiciled in the State of Missouri. She is the mother of Eric Kruger.

628.    Plaintiff Douglas Kruger is a citizen of the United States and domiciled in the State of Texas. He is the brother of Eric Kruger.

629.    Plaintiff Kristy Kruger is a citizen of the United States and domiciled in the State of Texas. She is the sister of Eric Kruger.

630.    As a result of the attack, and the death of Eric Kruger, Plaintiffs Lawrence Kruger, Carol Kruger, Douglas Kruger, and Kristy Kruger have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 34.    THE NOVEMBER 9, 2006 ATTACK – BAGHDAD

### The Cox Family

631.    Glenn Michael Cox is a citizen of the United States and domiciled in the State of Florida.

632.    On November 9, 2006, Glenn Michael Cox, then 45, was serving as a civilian contractor for DynCorp International in Iraq when an EFP detonated near his vehicle.

633.    The weapon used to injure Glenn Michael Cox was an Iranian-manufactured EFP provided to Iranian-funded and –trained terror operatives in Iraq.

634.    As a result of the attack, Mr. Cox received multiple shrapnel injuries to his right side.

635. Mr. Cox's right ulna was shattered, along with a majority of the bones in his right hand. Mr. Cox has an artificial knuckle in his right hand. Mr. Cox also suffered from a severed nerve in his right forearm, and still has a large amount of scarring on his arm and hand.

636. Mr. Cox also suffered from hearing loss as a result of the attack.

637. As a result of the attack, and the injuries he suffered, Glenn Michael Cox has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 35.   THE NOVEMBER 13, 2006 ATTACK – BAGHDAD

### The Kim Family

638. Jang Ho Kim was domiciled in the State of California when he was killed in Iraq. He became a citizen of the United States posthumously.

639.  On November 13, 2006, Jang Ho Kim, aged 20, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

640. Jang Ho Kim was killed in the attack.

641. The weapon used to kill Jang Ho Kim was an Iranian-manufactured EFP provided to Kata'ib Hezbollah operatives in Iraq.

642. Plaintiff Sangsoon Kim is a citizen of the United States and domiciled in the State of California. She is the mother of Jang Ho Kim.

643. Plaintiff Seop (Steve) Kim is a citizen of the United States and domiciled in the State of California. He is the father of Jang Ho Kim.

644. Plaintiff Michelle Kim is a citizen of the United States and domiciled in the State of California. She is the sister of Jang Ho Kim.

645. Plaintiff Seop (Steve) Kim brings an action individually and on behalf of the Estate of Jang Ho Kim, as its legal representative.

646.     As a result of the attack, and the death of Jang Ho Kim, Plaintiffs Sangsoon Kim, Seop (Steve) Kim and Michelle Kim have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 36.     THE NOVEMBER 26, 2006 ATTACK – BAGHDAD

### The Fraser Family

647.     David M. Fraser was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

648.     On November 26, 2006, David M. Fraser, aged 25, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

649.     David M. Fraser was killed in the attack.

650.     The weapon used to kill David M. Fraser was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

651.     Plaintiff Helen Fraser is a citizen of the United States and domiciled in the State of Texas. She is the mother of David M. Fraser.

652.     Plaintiff Richard Fraser is a citizen of the United States and domiciled in the State of Texas. He is the father of David M. Fraser.

653.     Plaintiff Richard Fraser brings an action individually and on behalf of the Estate of David M. Fraser, as its legal representative.

654.     As a result of the attack, and the death of David M. Fraser, Plaintiffs Helen Fraser and Richard Fraser have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

**37.**   **THE DECEMBER 3, 2006 ATTACK – BAGHDAD**

**The English Family**

655.    Shawn L. English was a citizen of the United States and domiciled in the State of Ohio when he was killed in Iraq.

656.    On December 3, 2006, Shawn L. English, aged 35, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

657.    Shawn L. English was killed in the attack.

658.    The weapon used to kill Shawn L. English was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

659.    Plaintiff Tricia English is a citizen of the United States and domiciled in the State of Ohio. She is the widow of Shawn L. English.

660.    Plaintiff N.W.E., a minor represented by his legal guardian Tricia English, is a citizen of the United States and domiciled in the State of Ohio. He is the son of Shawn L. English.

661.    Plaintiff N.C.E., a minor represented by his legal guardian Tricia English, is a citizen of the United States and domiciled in the State of Ohio. He is the son of Shawn L. English.

662.    Plaintiff A.S.E., a minor represented by his legal guardian Tricia English, is a citizen of the United States and domiciled in the State of Ohio. He is the son of Shawn L. English.

663.    Todd Daily brings an action on behalf of the Estate of Shawn L. English, as its legal representative.

664.    As a result of the attack, and the death of Shawn L. English, Plaintiffs Tricia English, N.W.E., N.C.E. and A.S.E. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Starkey Family**

665.    Joshua Starkey is a citizen of the United States and domiciled in the State of Texas.

666.    On December 3, 2006, Joshua Starkey, then 23, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

667.    The weapon used to injure Joshua Starkey was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

668.    As a result of the attack, shrapnel impacted Joshua Starkey's body on his right shoulder and right side of his face. He also sustained burns to his face and shoulder.

669.    Joshua Starkey has been diagnosed with PTSD.  He has sought out counseling and has been prescribed medication to address related issues.

670.    As a result of the attack, and the injuries he suffered, Joshua Starkey has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 38.    THE DECEMBER 10, 2006 ATTACK – BAGHDAD

**The Gibson Family**

671.    Brennan C. Gibson was a citizen of the United States and domiciled in the State of Oregon when he was killed in Iraq.

672.    On December 10, 2006, Brennan C. Gibson aged 26, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

673.    Brennan C. Gibson was killed in the attack.

674.    The weapon used to kill Brennan C. Gibson was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

675.    Plaintiff Linda Gibson is a citizen of the United States and domiciled in the State of Oregon. She is the mother of Brennan C. Gibson.

676.    Plaintiff John Gibson is a citizen of the United States and domiciled in the State of Oregon. He is the step-father of Brennan C. Gibson.

677.    Plaintiff Stephanie Gibson Webster is a citizen of the United States and domiciled in the State of Oregon. She is the sister of Brennan C. Gibson.

678.    Plaintiff Sean Elliott is a citizen of the United States and domiciled in the State of Oregon. He is the brother of Brennan C. Gibson.

679.    Plaintiff Travis Gibson is a citizen of the United States and domiciled in the State of Oregon. He is the brother of Brennan C. Gibson.

680.    As a result of the attack, and the death of Brennan C. Gibson, Plaintiffs Linda Gibson, John Gibson, Stephanie Gibson Webster, Sean Elliott and Travis Gibson have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 39.    THE DECEMBER 20, 2006 ATTACK – BAGHDAD

### The Little Family

681.    William Ronald Little is a citizen of the United States and domiciled in the State of Florida.

682.    On December 20, 2008, William Ronald Little, then 43, and a former soldier in the U.S. military, was serving as a civilian contractor in Iraq when an EFP detonated near his vehicle.

683.    Mr. Little was injured in the attack.

684.    The weapon used to injure Mr. Little was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

685.    As a result of the attack, Mr. Little sustained shrapnel to his right eye socket necessitating the placement of a metal plate under his right eye. Shrapnel also impacted the right side of his face and his arm.

686.    He lost a portion of muscle tissue in his back-shoulder area and part of his right tricep muscle was detached. He no longer has full range of motion in his right arm.

687.    He sustained nerve damage to his right cheek, sinus area, and his upper lip.  He has undergone rhinoplasty and other procedures to address the injuries to these areas.

688.    As a result of the attack, and the injuries he suffered, William Ronald Little has experienced severe physical and mental anguish and extreme emotional pain and suffering.

689.    Plaintiff Brenda Little is a citizen of the United States and domiciled in the State of Florida. She is the wife of William Ronald Little.

690.    Plaintiff Kira Sikes is a citizen of the United States and domiciled in the State of Florida. She is the daughter of William Ronald Little and Brenda Little.

691.    Plaintiff William Ronald Little, Jr. is a citizen of the United States and domiciled in the State of Florida. He is the son of William Ronald Little and Brenda Little.

692.    Brenda Little brings this action individually and on behalf of William Ronald Little, Jr. as his power of attorney.

693.    As a result of the attack, and the injuries William Ronald Little has suffered, Plaintiffs Brenda Little, Kira Sikes and William Ronald Little, Jr. have experienced severe mental anguish, and extreme emotional pain and suffering.

**The Denman Family**

694.    Josh Denman is a citizen of the United States and domiciled in the State of Florida.

695.    On December 20, 2008, Josh Denman, then 21, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

696.    Josh Denman was injured in the attack.

697.    The weapon used to injure Josh Denman was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

698.     As a result of the attack, Josh Denman sustained shrapnel in his right arm and right hand.  He has undergone surgery and procedures to address the removal of shrapnel and scar tissue.

699.     As a result of the attack, and the injuries he suffered, Josh Denman has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 40.     THE DECEMBER 30, 2006 ATTACK – BAGHDAD

### The Sullivan Family

700.     John M. Sullivan was a citizen of the United States and domiciled in the State of Tennessee when he was killed in Iraq.

701.     On December 30, 2006, John M. Sullivan, aged 22, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

702.     John M. Sullivan was killed in the attack.

703.     The weapon used to kill John M. Sullivan was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

704.     Plaintiff Debbie Beavers is a citizen of the United States and domiciled in the State of Tennessee. She is the mother of John M. Sullivan.

705.     As a result of the attack, and the death of John M. Sullivan, Plaintiff Debbie Beavers has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

## 41.     THE DECEMBER 31, 2006 ATTACK – BAGHDAD

### The Blohm Family

706.     Alan R. Blohm was a citizen of the United States and domiciled in the State of Alaska when he was killed in Iraq.

707.     On December 31, 2006, Alan R. Blohm, aged 21, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

708.    Alan R. Blohm was killed in the attack.

709.    The weapon used to kill Alan R. Blohm was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

710.    Plaintiff Denise Vennix is a citizen of the United States and domiciled in the State of Michigan. She is the mother of Alan R. Blohm.

711.    Chris Blohm was a citizen of the United States at the time of the death of Alan R. Blohm. He was the father of Alan R. Blohm. He died on May 4, 2017.

712.    Plaintiff Jeremy Blohm is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Alan R. Blohm.

713.    Plaintiff Jeremy Blohm brings an action individually and on behalf of the Estate of Chris Blohm, as its legal representative.

714.    Plaintiff Kiana Blohm is a citizen of the United States and domiciled in the State of Michigan. She is the sister of Alan R. Blohm.

715.    As a result of the attack, and the death of Alan R. Blohm, Plaintiffs Denise Vennix, Jeremy Blohm and Kiana Blohm experienced and continue to experience severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 42.    THE DECEMBER 31, 2006 ATTACK – BAQUBAH

### The Smith Family

716.    Richard Smith was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

717.    On December 31, 2006, Richard Smith, aged 20, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

718.    Richard Smith was killed in the attack.

719.   The weapon used to kill Richard Smith was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

720.   Plaintiff James Smith is a citizen of the United States and domiciled in the State of Texas. He is the father of Richard Smith.

721.   Plaintiff Megan Mauk is a citizen of the United States and domiciled in the State of Texas. She is the sister of Richard Smith.

722.   As a result of the attack, and the death of Richard Smith, Plaintiffs James Smith and Megan Mauk have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 43.   THE JANUARY 14, 2007 ATTACK – BAGHDAD

**The Vaccaro Family**

723.   Robert Vaccaro is a citizen of the United States and domiciled in the State of Rhode Island.

724.   On January 14, 2007, Robert Vaccaro, then 23, was serving in the United States military in Iraq. Mr. Vaccaro was seated in the fourth vehicle of a six-vehicle convoy conducting a route clearance when an EFP detonated near his vehicle.

725.   The weapon used to injure Robert Vaccaro was an Iranian-manufactured EFP provided to Iranian-funded and –trained terror operatives in Iraq.

726.   Mr. Vaccaro was in a coma for three weeks following the attack, and endured several surgeries.

727.   As a result of the attack, Mr. Vaccaro was diagnosed with a TBI, which caused him to suffer from seizures.

728.   Mr. Vaccaro still suffers from weakness in his left side, and has had speech therapy, occupational therapy, and physical therapy for his injuries.

729.    Robert Vaccaro has also been diagnosed with PTSD.

730.    Robert Vaccaro has been prescribed medication to treat his injuries.

731.    As a result of the attack, and the injuries he suffered, Robert Vaccaro has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 44.    THE MARCH 20, 2007 ATTACK – BAGHDAD

### The Glawson Family

732.    Curtis E. Glawson was a citizen of the United States and domiciled in the State of Alabama when he was killed in Iraq.

733.    On March 20, 2007, Curtis E. Glawson, aged 24, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

734.    Curtis E. Glawson was killed in the attack.

735.    The weapon used to kill Curtis E. Glawson was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

736.    Plaintiff Jazmon Reyna is a citizen of the United States and domiciled in the State of Arizona. She is the sister of Curtis E. Glawson.

737.    As a result of the attack, and the death of Curtis E. Glawson, Jazmon Reyna has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her brother's society, companionship, comfort, advice and counsel.

## 45.    THE JUNE 10, 2007 ATTACK – BAGHDAD

### The Gomez Family

738.    Plaintiff Angel Gomez is a citizen of the United States and domiciled in the State of Texas.

739.    On June 10, 2007, Angel Gomez, then 20, was serving in the United States military in Iraq. Mr. Gomez was a gunner in the lead vehicle of a four-vehicle convoy tasked with looking for three missing U.S. soldiers when an EFP detonated near his vehicle.

740.    The weapon used to injure Angel Gomez was an Iranian-manufactured EFP provided to Iranian-funded and –trained terror operatives in Iraq.

741.    The blast injured Mr. Gomez's right leg, necessitating an amputation below his knee.

742.    Angel Gomez received shrapnel to his back, which resulted in complete muscle atrophy in his back.

743.    Angel Gomez was wearing Interceptor Body Armor ("IBA"), which included ballistic plates to protect his abdomen.  The shrapnel hit the IBA plates, which slit Mr. Gomez's abdomen open and caused internal injuries.

744.    Mr. Gomez was also diagnosed with a concussion, a TBI, and PTSD.

745.    Mr. Gomez lived in a hospital for a year and a half while receiving treatment and undergoing numerous surgeries.  He has been prescribed medication to treat his injuries.

746.    As a result of the attack, and the injuries he suffered, Angel Gomez has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 46.    THE JUNE 14, 2007 ATTACK – SCANIA

### The Moores Family

747.    Plaintiff Andrew Moores is a citizen of the United States and domiciled in the State of Maine.

748.    On June 14, 2007, Andrew Moores, then 23, was serving in the United States military in Iraq. Mr. Moores was the truck commander in a gun truck that was part of a convoy

tasked with escorting military vehicles between Kuwait and Iraq when an EFP detonated near his vehicle.

749.    The weapon used to injure Andrew Moores was an Iranian-manufactured EFP provided to Iranian-funded and –trained terror operatives in Iraq.

750.    As a result of the attack, Andrew Moores took shrapnel in his left hand and suffered injury to his right shoulder, which necessitated surgery and physical therapy. He experiences limitations on his shoulder movement to this day.

751.    Mr. Moores also injured his neck as a result of the attack, and takes medication for pain.

752.    Andrew Moores was diagnosed with PTSD, for which he sought counseling. He takes medication for his PTSD, as well as medication for the sleep issues he experiences stemming from the attack.

753.    As a result of the attack, and the injuries he suffered, Andrew Moores has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 47.    THE SEPTEMBER 29, 2007 ATTACK – BAGHDAD

**The Watts Family**

754.    Plaintiff Christopher Watts is a citizen of the United States and domiciled in the State of Texas.

755.    On September 29, 2007, Christopher Watts, then 22, was serving in the U.S. military in Iraq, when his vehicle was struck by an EFP.

756.    The weapon used to injure Christopher Watts was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

757.    Mr. Watts sustained a concussion as a result of the attack. He has been diagnosed with a TBI.

758.    He experiences memory loss and at times his speech is slurred.

759.    He has been prescribed anti-depressants and medication to address sleep-related issues.

760.    As a result of the attack, and the injuries he suffered, Christopher Watts has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 48.    THE MAY 9, 2008 ATTACK – BAGHDAD

### The Williamson Family

761.    Wesley Williamson is a citizen of the United States and domiciled in the State of Texas.

762.    On May 9, 2008, Wesley Williamson, then 23, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

763.    The weapon used to injure Mr. Williamson was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

764.    As a result of the attack, Mr. Williamson's right ulna and radius were completely shattered, and his posterior interosseous nerve was severed.

765.    Shrapnel also penetrated his body.

766.    Mr. Williamson received medical treatment in Iraq, Germany, Washington D.C., and Brooke Army Medical Center in San Antonio, Texas.

767.    He has undergone multiple procedures to stabilize his condition and address his injuries.

768.    In an attempt to regain functionality of his right arm and hand, Mr. Williamson underwent multiple surgeries.

769.    These surgeries included the installation of plates and 16 screws in his right arm and tendon transfer surgery.

770.     Mr. Williamson underwent occupational therapy for approximately 18 months. During that time, he was prescribed medications to manage the pain that he experienced.

771.     The injury to his hand has resulted in a loss of dexterity to his fingers. This has forced Mr. Williamson to re-learn simple everyday tasks such as typing.

772.     He experiences pain and limitations of movement daily.

773.     Mr. Williamson has suffered memory loss since the attack and has difficulty recalling information.

774.     He has been diagnosed with PTSD and a TBI, and has sought counseling and been prescribed medication to treat those conditions.

775.     Plaintiff Jesse Williamson is a citizen of the United States and domiciled in the State of New Mexico. He is the brother of Wesley Williamson.

776.     As a result of the attack, and the injuries Wesley Williamson has suffered, Plaintiff Jesse Williamson has experienced severe mental anguish, and extreme emotional pain and suffering.

## 49.     THE AUGUST 26, 2008 ATTACK – SADR CITY

### The Latham Family

777.     Plaintiff Tyler Latham is a citizen of the United States and domiciled in the State of Michigan.

778.     On August 26, 2008, Tyler Latham, age 22, was serving in the U.S. military in Iraq, when his vehicle was struck by an EFP.

779.     The weapon used to injure Tyler Latham was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

780.     As a result of the attack, Mr. Latham sustained significant injuries to his left hand. This required complex surgery to reconnect tendons and ligaments in that hand.

781.    The damage to his hand has necessitated extensive physical therapy.

782.    He also sustained significant injuries due to the impact of multiple pieces of shrapnel in his face, legs, and arm. This necessitated surgery and treatment.

783.    He continues to experience limitations in strength and mobility of his left hand.

784.    He suffers with chronic pain in his left hand and arm.

785.    In addition, Mr. Latham has been diagnosed with a TBI.

786.    As a result of the attack, and the injuries he suffered, Tyler Latham has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 50.    **THE APRIL 22, 2011 ATTACK – NUMANIYAH**

**The Stiggins Family**

787.    Antonio Stiggins was a citizen of the United States and domiciled in the State of New Mexico when he was killed in Iraq.

788.    On April 22, 2011, Antonio Stiggins, aged 25, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

789.    Antonio Stiggins was killed in the attack.

790.    The weapon used to kill Antonio Stiggins was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

791.    Plaintiff Angel Mayes is a citizen of the United States and domiciled in the State of New Mexico. She is the mother of Antonio Stiggins.

792.    Plaintiff Luke Stiggins is a citizen of the United States and domiciled in the State of New Mexico. He is the father of Antonio Stiggins.

793.    Plaintiff Donald Mayes is a citizen of the United States and domiciled in the State of New Mexico. He is the step-father of Antonio Stiggins.

794.     Plaintiff Angel Mayes brings an action individually and on behalf of the Estate of Antonio Stiggins, as its legal representative.

795.     As a result of the attack, and the death of Antonio Stiggins, Plaintiffs Angel Mayes, Luke Stiggins, and Donald Mayes have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**AGAINST DEFENDANTS ON BEHALF OF EACH PLAINTIFF IDENTIFIED HEREIN WHO SURVIVED AN ACT OF INTERNATIONAL TERRORISM FOR DEFENDANTS' MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL KILLING THAT RESULTED IN PERSONAL INJURY PURSUANT TO 28 U.S.C. § 1605A(c)**

796.     Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

797.     Plaintiffs identified in the foregoing paragraphs were grievously injured by Defendants' provision of material support (within the meaning of § 1605A(h)(3)) to Hezbollah and the IRGC which planned, conspired and provided substantial support to extrajudicial killings and attempted extrajudicial killings that injured the Plaintiffs.

798.     As a direct and proximate result of the willful, wrongful, and intentional acts of the Defendants and their agents, Plaintiffs identified in the foregoing paragraphs were injured and endured severe physical injuries, extreme mental anguish, pain and suffering, and economic losses.

799.     Plaintiffs' compensatory damages, include, but are not limited to, their severe physical injuries, extreme mental anguish, pain and suffering, and any economic losses determined by the trier of fact.

800.    Defendants' conduct was criminal, outrageous, extreme, wanton, willful, malicious, and a threat to the public warranting an award of punitive damages against Defendants pursuant to 28 U.S.C. § 1605A(c)(4).

### SECOND CLAIM FOR RELIEF
**AGAINST DEFENDANTS ON BEHALF OF THE ESTATES OF PLAINTIFFS IDENTIFIED HEREIN FOR DEFENDANTS' MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL KILLING THAT RESULTED IN WRONGFUL DEATH PURSUANT TO 28 U.S.C. § 1605A(c)**

801.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

802.    The Estates of Plaintiffs listed in the foregoing paragraphs assert claims on behalf of the decedents who were grievously injured by Defendants' provision of material support (within the meaning of § 1605A(h)(3)), to Hezbollah and the IRGC which planned, conspired and provided substantial support to acts of extrajudicial killing that caused the decedents' deaths.

803.    As a direct and proximate result of Defendants' willful, wrongful, and intentional acts and the willful, wrongful, and intentional acts of their agents, the decedents listed in the foregoing paragraphs endured physical injury, extreme mental anguish, and pain and suffering that ultimately led to their deaths.

804.    Defendants are therefore liable for the full amount of Plaintiffs' compensatory damages, including physical injuries, extreme mental anguish, pain and suffering, wrongful death, survivorship, and any pecuniary loss (or loss of income to the estates).

805.    Defendants' conduct was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. § 1605A(c)(4).

### THIRD CLAIM FOR RELIEF
**AGAINST DEFENDANTS ON BEHALF OF THE FAMILIES OF PLAINTIFFS IDENTIFIED HEREIN AS INJURED OR KILLED AS A RESULT OF DEFENDANTS' MATERIAL SUPPORT TO ACTS OF EXTRAJUDICIAL KILLING FOR SOLATIUM AND INTENTIONAL INFLICTION OF SEVERE EMOTIONAL DISTRESS PURSUANT TO 28 U.S.C. § 1605A(c)**

806.    Plaintiffs repeat and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

807.     Defendants' acts in providing material support for acts of extrajudicial killing were intended to inflict severe emotional distress on the Plaintiffs.

808.    As a result of Defendants' acts, the families of individuals identified in the foregoing paragraphs as injured or killed as a result of Defendants' acts in providing material support for acts of extrajudicial killing have suffered severe emotional distress, extreme mental anguish, loss of sleep, loss of appetite, and other severe physical manifestations, as well as other harms to be set forth to the trier of fact.

809.    Defendants' conduct was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages against Defendant pursuant to 28 U.S.C. § 1605A(c).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand:

(a)    Judgment for all Plaintiffs against Defendants, jointly and severally, for compensatory damages, including, but not limited to, physical injury, extreme mental anguish, pain and suffering, economic losses and solatium, in amounts to be determined at trial;

(b)    Judgment for Plaintiff Estates against Defendants, jointly and severally, for compensatory damages for wrongful death, including, but not limited to, physical injury, extreme mental anguish, pain and suffering, economic losses, wrongful death, survivorship and any pecuniary loss (or loss of income to the estates) in amounts to be determined at trial;

(c)     Judgment for all Plaintiffs against Defendants, jointly and severally, for punitive damages in an amount to be determined at trial;

(d)     Plaintiffs' costs and expenses;

(e)     Plaintiffs' attorneys' fees; and

(f)     Such other and further relief as the Court finds just and equitable.


Dated: October 13, 2017

                                        **OSEN LLC**

                            By      /s/ Gary M. Osen
                                    Gary M. Osen (DC Bar No. NJ009)
                                    Ari Ungar (DC Bar No. NJ008)
                                    Naomi B. Weinberg (DC Bar No. NJ006)
                                    Aaron Schlanger (DC Bar No. NJ007)
                                    Michael Radine (DC Bar No. NJ015)
                                    William A. Friedman (DC Bar No. NJ012)
                                    Dina Gielchinsky (DC Bar No. NJ013)
                                    Peter Raven-Hansen, Of Counsel
                                    (DC Bar No. 215897)
                                    2 University Plaza, Suite 402
                                    Hackensack, New Jersey
                                    (201) 265-6400

                                    **TURNER & ASSOCIATES, P.A.**
                                    C. Tab Turner
                                    4705 Somers Avenue, Suite 100
                                    North Little Rock, AR 72116
                                    (501) 791-2277

                                    Attorneys for Plaintiffs