UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
---------------------------------------------------------------------x
KELLI D. HAKE, et al.,                                              :
                                                                    :
        Plaintiffs,                                          :        Case No. 17-cv-114 (TJK)
                                                                    :
-against-                                                           :
                                                                    :
BANK MARKAZI JOMHOURI ISLAMI IRAN, et al.,                          :
                                                                    :
        Defendants.                                          :
---------------------------------------------------------------------x
JOSHUA BROOKS, et al.,                                              :
                                                                    :
        Plaintiffs,                                          :        Case No. 17-cv-737 (TJK)
                                                                    :
-against-                                                           :
                                                                    :
BANK MARKAZI JOMHOURI ISLAMI IRAN, et al.                           :
                                                                    :
        Defendants.                                          :
---------------------------------------------------------------------x
DONALD FIELD, et al.,                                               :
                                                                    :
        Plaintiffs,                                          :        Case No. 17-cv-2126 (TJK)
                                                                    :
-against-                                                           :
                                                                    :
BANK MARKAZI JOMHOURI ISLAMI IRAN, et al.,                          :
                                                                    :
        Defendants.                                          :
---------------------------------------------------------------------x

## PLAINTIFFS' STATUS REPORT IN RESPONSE TO THE COURT'S
## JULY 16, 2020 ORDER

    Plaintiffs respectfully write as instructed by the Court during the July 16, 2020 conference regarding possible options for proceeding in the above-captioned cases (the "*Bank Markazi* cases") so as to best conserve judicial resources.[1] This Status Report (1) identifies the process for taking

---

[1]     Plaintiffs' counsel filed a fourth related case before Your Honor, *Wise v. Bank Markazi Jomhouri Islami Iran*, No. 19-cv-995, but intend to add additional plaintiffs by amendment before initiating the expensive and time-

judicial notice of prior decisions in the Foreign Sovereign Immunities Act ("FSIA") context; (2) addresses the number of terrorist attacks at issue in the *Bank Markazi* cases and the extent to which they overlap with three cases our clients brought against the Islamic Republic of Iran in this District (*Karcher*, No. 16-cv-242-CKK, *Stearns*, No. 17-cv-131-RCL, and *Lee*, No. 19-cv-830-APM; together the "*Iran* cases"); and (3) outlines options for proceeding on liability and damages issues given the current posture of the *Iran* cases. The following is the distribution of "*Iran* Cases" in the District Court:

| Case Name | Case Number | Judge Assigned |
| :---: | :---: | :---: |
| *Karcher v. Iran* | 16-cv-242 | Judge Kollar-Kotelly |
| *Stearns v. Iran* | 17-cv-131 | Judge Lamberth |
| *Lee v. Iran* | 19-cv-830 | Judge Mehta |

Because only the *Karcher* court has received specific attack evidence, Plaintiffs respectfully recommend that this Court consolidate the three *Bank Markazi* cases and review Plaintiffs' evidence establishing Iran's (and thus the *Bank Markazi* Defendants') liability for the attacks (a) for which Plaintiffs have already collected sufficient evidence and (b) that will not be reviewed by the *Karcher* court.

**I.      Judicial Notice**

As Plaintiffs set forth in their proposed findings of fact and conclusions of law ("*Hake* PFFCL"), ECF No. 100-1 (filed under seal), this Court may judicially notice findings from the *Iran* cases "without necessitating the formality of having that evidence reproduced.'" *Hake* PFFCL at 85-86 (quoting *Harrison v. Republic of Sudan*, 882 F. Supp. 2d 23, 31 (D.D.C. 2012)). And

---

consuming service process under the Foreign Sovereign Immunities Act. *Wise* includes 33 of the *Bank Markazi* attacks, along with 69 new attacks. Because service has not yet been effectuated in *Wise*, Plaintiffs' counsel do not (yet) seek consolidation of this action with the other *Bank Markazi* cases and do not include the 69 new attacks in *Wise* in their computations herein.

while courts may "rely upon the evidence presented in [the] earlier litigation," they must still "reach their own, independent findings of fact in the cases before them." *Id.* (quoting *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 172 (D.D.C. 2010)). To that end, courts have directed FSIA plaintiffs to provide excerpts of the evidentiary records underlying prior decisions before noticing the findings and conclusions in those decisions. *See Salzman v. Islamic Republic of Iran*, No. 17-cv-2475 (RDM), 2019 WL 4673761, at *3 (D.D.C. Sept. 25, 2019) (taking judicial notice of a prior case involving the same attack, but only after the "[p]laintiffs filed with the Court the essential evidence from" that case).

Thus, for instance, Plaintiffs propose providing the Court with excerpts of the evidentiary record underlying any attacks for which Judge Kollar-Kotelly finds Iran liable. This evidence includes attack-specific expert reports from the *Karcher* plaintiffs' expert U.S. Army Col. (Ret.) Kevin Lutz and supporting exhibits, most of which Plaintiffs acquired through Freedom of Information Act ("FOIA") requests, along with more general forensic reports from Mr. Lutz and *Karcher* plaintiffs' expert U.S. Army Capt. (Ret.) Wade Barker.

In order to familiarize the Court with the nature of the submissions made to the *Karcher* court, Plaintiffs attach hereto Mr. Lutz's expert report as to one attack at issue in *Hake* and *Field* (Exhibit A hereto), along with the underlying evidence (Exhibit B hereto) (together, the "Sample Lutz Report"). The *Karcher* plaintiffs also filed this report as a sample before Judge Kollar-Kotelly, *Karcher* ECF No. 100, who approved its form and permitted the submission of further reports from Mr. Lutz, *see* Nov. 15, 2019 Order, *Karcher*, ECF No. 108. In the Sample Lutz Report, Mr. Lutz opined that the attack "involved the use of a multi-array EFP of original Hezbollah and IRGC design that was supplied by the IRGC," and "that the weapon was likely assembled and emplaced by an IRGC-sponsored Special Group." Exhibit A at 1. The Sample Lutz

3

Report and supporting evidence provides a representative example of the expert opinion and underlying documentation Plaintiffs would submit in order to establish that Iran is responsible (and thus the *Bank Markazi* Defendants) for specific attacks at issue here.

## II.     Common Attacks in the *Bank Markazi* and *Iran* Cases

There are 154 "unique" attacks in the *Bank Markazi* cases—because plaintiffs engaged counsel at different times, some attacks appear in multiple cases. Nearly all of these attacks also appear in the *Iran* cases, and *vice versa*. Plaintiffs in the *Bank Markazi* and *Iran* cases allege that all of the attacks described therein were committed jointly by the Islamic Revolutionary Guard Corps ("IRGC") and Hezbollah at the direction of Iran. Because the *Bank Markazi* Plaintiffs allege that Defendants are responsible for providing material support to the IRGC *at Iran's direction*, determinations as to Iran's liability for the overlapping attacks in the *Iran* cases are judicially noticeable here. Moreover, because Plaintiffs allege that the *Bank Markazi* Defendants substantially assisted Iran during the entire period relevant to the *Iran* cases, there are no attacks for which Iran could be liable but not Defendants here (assuming the Court finds the evidence sufficient to establish that the *Bank Markazi* Defendants provided material support to Iran and the IRGC). In other words, Iran's liability for each attack is a required showing to find the *Bank Markazi* Defendants' liability for each attack.

These 154 attacks include 92 of the 93 attacks alleged in *Karcher* (one *Karcher* attack does not appear in any *Bank Markazi* case). Thus, should this Court judicially notice and agree with Judge Kollar-Kotelly's eventual liability findings in *Karcher*, 62 attacks would remain in the *Bank Markazi* cases for this Court's review (the "62 Attacks"). Taking the cases in the order in which they were filed, there are 21 attacks in *Hake* that are not in *Karcher*, 10 attacks in *Brooks* that are

not in *Karcher* or *Hake*, and 31 attacks in *Field* that are not in *Karcher*, *Hake* or *Brooks*.[2] This chart summarizes these figures:

| Case Name | Total Number of Pleaded Attacks | Total Number of Attacks Common to *Karcher* | Total Number of Unique Attacks |
|---|---|---|---|
| *Karcher* | 93 | N/A | N/A |
| *Hake* | 84 | 63 | 21 |
| *Brooks* | 16 | 3 | 10 |
| *Field* | 72 | 39 | 31 |
| **Total (without overlap)** | 154 | 92 | **62** |

These 62 Attacks are either in *Stearns* or *Lee* (or both). Neither the *Stearns* nor *Lee* courts has assessed individual attacks so there has been no duplication of effort by any court to date. If this Court decides to accept submissions and review attack-specific expert reports in the *Bank Markazi* cases, Plaintiffs will notify the *Lee* and *Stearns* courts accordingly to ensure no unnecessary expenditure of judicial resources.

Plaintiffs have so far gathered records through FOIA requests sufficient to submit evidence of Iran's liability as to approximately 50 of the 62 Attacks.[3] Should this Court determine that Plaintiffs have established the *Bank Markazi* Defendants' liability generally, Plaintiffs' expert can begin preparing reports on the IRGC/Hezbollah's (and thus Iran's) responsibility for those attacks whenever the Court indicates that it wishes to receive them.

---

[2]   Including *Wise*, there are 223 separate attacks in the *Bank Markazi* cases and 131 without the *Karcher* attacks. There are 69 new attacks in *Wise* that are not in *Karcher*, *Hake*, *Brooks*, or *Field*.

[3]   As for the remaining attacks, Plaintiffs await additional records they requested through FOIA requests between 2017 and 2019 from U.S. Central Command ("CENTCOM"), a component of the Department of Defense that maintains records relating to terrorist attacks that were perpetrated against U.S. forces in Iraq during the relevant period. Plaintiffs' counsel request pertinent records from CENTCOM and other government agencies upon being retained by each client, but the production process is usually very slow-going. Plaintiffs' counsel have sued CENTCOM twice to compel production of these records; CENTCOM completed production in the first matter but is only producing records in the second at a limited rate (further delayed by the COVID-19 pandemic). Awaiting production of those records nevertheless appears likely to be more efficient than seeking discovery in these cases—for example, by initiating *Touhy* requests.

There are several alternative methods the Court can adopt to address the IRGC's responsibility for the specific attacks at issue. In setting these out, Plaintiffs' counsel are mindful of conserving judicial resources and obtaining judgments as efficiently as possible, given the limited avenues for recovery for victims of terrorist attacks committed by Iran and its agencies and instrumentalities.

## III. Plaintiffs' Proposal for Proceeding on Liability

Assuming the Court finds the *Bank Markazi* Defendants' liability generally, Plaintiffs envision two methods the Court could use to review the 62 Attacks at issue in the *Bank Markazi* cases: (1) wait for the courts in all pending *Iran* cases to review them and (to the extent this Court concurs in the analysis) judicially notice the resulting findings; or (2) consolidate the three *Bank Markazi* cases (and *Wise*, once it is served on Defendants) and independently review the 62 Attacks at issue in them.

### A. Method 1: Wait for the *Iran* Cases to Complete Their Review of All of the Attacks

The Court could wait for the judges overseeing the *Iran* cases to separately make their liability determinations on the attacks at issue in those cases and then judicially notice the findings as set forth above (to the extent this Court concurs in the analysis set forth in those cases). Plaintiffs' concern with this approach is both practical and equitable. It would likely delay final adjudication of Plaintiffs' claims for several years. The *Lee* court is still reviewing proposed findings on Iran's role in the attacks generally (and as to four of the bellwether attacks in *Karcher*) and has not yet signaled how it prefers to receive attack-specific evidence. The *Stearns* court is still reviewing those plaintiffs' proposal for presenting even that generalized evidence. Only the *Karcher* court has received attack-specific evidence, but it has not yet issued any determinations (aside from the bellwether attacks).

That delay could have serious implications for Plaintiffs' recovery. The chief, if not sole, recovery source curently is the U.S. Victims of State Sponsored Terrorism Fund, 34 U.S.C. § 20144 ("U.S. VSST Fund"), which provides payments for § 1605A judgment-holders, but only periodically, and only when funds are available (previous rounds have paid as little as 4% of compensatory damage awards). *See In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 138 (D.D.C. 2009) ("the[se] tragedies … have been compounded by what has turned into a long and often futile quest for justice," with plaintiffs "holding unenforceable judgments," "fac[ing] years of costly, emotionally draining, and time-consuming post-judgment litigation"). Missing a round of payments could thus significantly prejudice a judgment-holder's chance of recovering anything. *See Azadeh v. Gov't of Islamic Republic of Iran*, 318 F. Supp. 3d 90, 101 & n.4 (D.D.C. 2018) (acknowledging that missing the U.S. VSST deadline could "deny[] [plaintiff] the most realistic path for recovery on any judgment," and promising to "move with the greatest possible haste to address any subsequent motion for a default judgment").

### B. Method 2: Consolidate the *Bank Markazi* Cases and Independently Review the 62 Attacks Not Subject to Review by the *Karcher* Court

Alternatively, the Court could (1) consolidate the *Bank Markazi* cases pursuant to Fed. R. Civ. P. 42(a) and (2) direct Plaintiffs to submit their attack-specific evidence for all 62 Attacks (along with providing additional evidence from *Karcher* helpful in reviewing attack evidence, such as the general reports of Mr. Lutz and Mr. Barker, noted above).[4] This approach would increase the likelihood of the *Bank Markazi* cases proceeding on a parallel track with *Karcher* such that when the liability determinations in *Karcher* are concluded, most of the 62 Attacks will have also

---

[4] As described more fully below, Plaintiffs propose making their submissions in stages by initially submitting proposed findings of fact and conclusions of law regarding Iran's liability for the approximately 50 attacks for which Plaintiffs believe they *already* have collected sufficient evidence.

been decided or at least fully briefed to this Court (as noted above, Plaintiffs are still collecting evidence as to several attacks, both here and in *Karcher*).[5]

### 1. Consolidation of the *Bank Markazi* Cases Will Promote Efficiency

The *Bank Markazi* cases are good candidates for consolidation because there is no meaningful difference between them except for the specific Plaintiffs. In periodically filing new suits, Plaintiffs' counsel attempt to balance their clients' interest in expeditiously filing their cases with the Court's interest in avoiding a proliferation of similar cases—thus, as stated above, some of the attacks appear in more than one of the *Bank Markazi* cases. Rather than judicially notice its own findings from one *Bank Markazi* case to another, the Court could simply consolidate the *Bank Markazi* cases pursuant to Fed. R. Civ. P. 42(a) and issue findings applicable to all three cases at one time. *See, e.g.*, *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 286 (D.D.C. 2011) ("consolidation is intended to avoid overlapping trials containing duplicative proof, excessive cost, and waste of valuable court time in the trial of repetitive claims, among other considerations") (summarizing *Vazquez Rivera v. Congar Int'l Corp.,* 241 F.R.D. 94, 95 (D.P.R. 2007)).

The Court may consolidate the cases *sua sponte*. *See id.* ("Consolidation pursuant to Rule 42(a) is permissive and vests a purely discretionary power in the district court, which may consolidate related cases *sua sponte*."). The *Bank Markazi* cases involve *only* "common question[s] of law or fact" and, although not required for consolidation, the same Defendants. *Id.* (quoting Rule 42(a)). Consolidation "is particularly appropriate" here as the actions involve "substantially the same witnesses and arise from the same series of events or facts," *id.*

---

[5] If the Court proceeded in this manner, Plaintiffs' counsel would then notify the *Lee* and *Stearns* courts that this Court was reviewing these attacks in order to prevent any duplication of review not specifically desired by the *Lee* or *Stearns* courts.

8

(quoting *Hanson v. District of Columbia*, 257 F.R.D. 19, 21 (D.D.C. 2009)). And, as stated above, by issuing findings applicable to all three *Bank Markazi* cases, the Court would not have to judicially notice its own findings where they overlap across the cases. Finally, this method would also prevent the several attacks for which Plaintiffs are still collecting evidence from delaying the Court's review and adjudication of attacks in other cases.

### 2. The Court's Review of the 62 Attacks

If this Court accepts Plaintiffs' proposal, their counsel would provide, as in *Karcher*, a consolidated expert report as to the approximately 50 attacks for which they currently have sufficient evidence, ensuring the attacks awaiting additional evidence do not unduly delay the Court's adjudication process. To further maximize efficiency in the face of their limited opportunities for recovery, Plaintiffs respectfully propose that to the extent the submitted evidence as to these approximately 50 attacks is satisfactory, the Court issue liability judgments and direct the Plaintiffs injured in these attacks to special masters for evaluation of their damages.[6] Once Plaintiffs have collected the necessary evidence as to the remaining attacks they would, subject to the Court's direction, provide that evidence to the Court in a second submission.

## IV. Damages

### A. Principal Types of Damages

For claims brought under § 1605A(c)(4), "damages may include economic damages, solatium, pain and suffering, and punitive damages." Default FSIA cases rely on relatively straightforward models in determining economic damages (i.e., lost wages) and solatium damages

---

[6] Due to Plaintiffs' above-mentioned concerns about limited options for relief, they also respectfully request that the Court periodically direct entry of final judgment for Plaintiffs with completed damages determinations pursuant to Fed. R. Civ. P. 54(b), rather than requiring all Plaintiffs' relief to remain contingent on a unitary entry of final judgment. *See Fritz v. Islamic Republic of Iran*, 324 F. Supp. 3d 54, 66–67 (D.D.C. 2018) (entering final judgment as to a portion of the plaintiffs so that they are not "prejudiced in their ability to receive prompt payment of all or some of their compensatory damages awarded from the . . . Victims of State Sponsored Terrorism fund"). If the Court is amenable to doing so, Plaintiffs will make periodic motions for such relief.

(i.e., intentional infliction of emotional distress in family members of victims), along with punitive damages. However, Plaintiffs have made a detailed proffer to the court in *Karcher* that EFPs, the weapon used in most of the attacks at issue in the *Bank Markazi* and *Iran* cases, present unique challenges in measuring pain and suffering for survivors of those attacks. As explained below, this difference counsels assessing Plaintiffs' damages claims (where the Court finds Defendants liable) in a particular order.

### B. *Karcher:* The Status of Plaintiffs' Damages Claims

In the *Karcher* plaintiffs' proposed findings of fact and conclusions of law submitted on March 20, 2019 (*Karcher* ECF No. 80), the plaintiffs asked the *Karcher* court to adopt an "adjustment of the existing framework's baseline for determining certain damages in cases involving injuries caused by EFPs,"[7] and set forth the following baselines and ranges for upwards and downwards departures:

| | |
|---|---|
| Psychological injuries (without TBI diagnosis/severe shrapnel/fractures/orthopedic injuries/polytrauma) | Baseline: $2 million<br>Range: $1.5 - $8 million |
| Mild TBI with psychological injuries (without severe shrapnel/fractures/orthopedic injuries/polytrauma/traumatic amputations) | Baseline: $5 million<br>Range: $3 - $7 million |
| Mild TBI with psychological injuries (with severe shrapnel/fractures/orthopedic injuries) | Baseline: $7 million<br>Range: $4 - $10 million |
| Mild TBI with psychological injuries (with polytrauma/traumatic amputations) | Baseline: $15 million<br>Range: $10 - $20 million |
| Moderate/severe TBI (without severe shrapnel/fractures/orthopedic injuries/polytrauma/traumatic amputations) | Baseline: $20 million<br>Range: $15 - $25 million |
| Moderate/severe TBI (with severe shrapnel/fractures/orthopedic injuries/polytrauma/traumatic amputations) | Baseline: $30 million<br>Range: $25 - $50 million |

---

[7] The injuries of most of the plaintiffs in the *Iran* and *Bank Markazi* cases stem from EFPs; some, however, relate to kidnappings, small arms fire, or other types of explosives. The proposed baselines would only apply to plaintiffs who *survived* an EFP attack; most victims died either instantly or shortly after an EFP attack.

In its August 26, 2019 decision, the *Karcher* court deferred judgment on the plaintiffs' request, 396 F. Supp. 3d 12, 64 (D.D.C. 2019), and subsequently referred all bellwether plaintiffs' damages claims to Mr. Alan Balaran, the court-appointed Special Master for a Report and Recommendation ("R&R"). The *Karcher* plaintiffs submitted all supporting documentation to the Special Master (including copies of trial testimony, expert reports, and Plaintiffs' sworn declarations) as of March 2, 2020. The R&R has not yet been issued; accordingly, the *Karcher* court has made no final determination as to any of the bellwether plaintiffs' damages or the request for instituting new damages baselines for EFP-related injuries.[8]

Apart from the bellwether plaintiffs, there are 275 *Karcher* plaintiffs with EFP-related injuries, but the vast majority of those plaintiffs are relatives of deceased service members. None of the 372 non-bellwether *Karcher* plaintiffs' damages claims have been referred to a Special Master or reviewed by that court.

Similarly, most of the Plaintiffs in the *Bank Markazi* cases (who are not in *Karcher*) are family members or estates of *decedent* victims of EFPs (or have injuries relating to other types of attacks), rather than *survivors* of EFP attacks. Reviewing most of these damages claims will be straightforward: Family members' solatium claims are generally calculated pursuant to the framework described in *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006), with occasional departures, and estates' economic claims are generally presented by expert opinion (some estates may also have pain and suffering claims relating to injuries incurred before

---

[8] In the event that the *Karcher* court declines plaintiffs' requested adjustment of the existing framework's baseline for determining certain damages in cases involving injuries caused by EFPs, Plaintiffs' counsel do not anticipate renewing that request to this or any other court presiding over the *Iran* cases.

death). The Court may consider assigning these claims to one or more special masters (possibly in coordination with the *Iran* cases).[9]

### C. Plaintiffs' Proposal for Proceeding on Damages

Nearly all of the Plaintiffs in the *Bank Markazi* cases are also in one of the *Iran* cases. Each such plaintiff's damages will be the same in both cases. Thus, as with liability for the attacks, the courts reviewing these cases may judicially notice damages determinations.[10] In large-scale FSIA cases like these, damages are generally assigned to special masters (in some cases, multiple special masters—Judge Lamberth in *Peterson v. Islamic Republic of Iran* appointed 13 for about 1,000 plaintiffs (there are over 1,100 plaintiffs in the *Bank Markazi* cases including *Wise*), *see* No. 01-cv-2094-RCL, ECF Nos. 33, 39). To the extent this Court accepts Plaintiffs' proposal to review the 62 Attacks, the special master(s) appointed by the Court to make damages recommendations could prioritize the 171 estates and/or family members of victims killed in the unique *Bank Markazi* attacks until the *Karcher* court rules on damage baselines for survivors of EFP attacks.

### V. Summary of Plaintiffs' Proposal

Plaintiffs respectfully propose that the Court consolidate the *Bank Markazi* cases and employ the following procedure (assuming that this Court determines that the *Bank Markazi* Defendants are generally responsible for attacks orchestrated by the IRGC at Iran's direction):

- Direct Plaintiffs to submit proposed findings of fact and conclusions of law regarding Iran's liability for the approximately 50 attacks not subject to review by the *Karcher* court (for which Plaintiffs believe they have already collected

---

[9] Plaintiffs propose briefing punitive damages directly to the Court at a later phase in the proceedings. As Plaintiffs will show, punitive damages were added to the FSIA's terrorism exception in 2008 and apply retroactively. *See Opati v. Republic of Sudan*, 140 S. Ct. 1601, 1608 (2020) ("Congress was as clear as it could have been when it authorized plaintiffs to seek and win punitive damages for past conduct using § 1065A(c)'s new federal cause of action.").

[10] As explained herein, damages in default § 1605A cases are generally awarded in relation to certain frameworks that may not correspond to damages as determined by a jury. Plaintiffs contend, therefore, that any such damages rulings do not collaterally estop them—or Defendants—from seeking different damages from juries in contested cases relating to these same injuries.

sufficient evidence), together with expert reports, supporting evidence, and the additional evidence presented in *Karcher* concerning relevant forensic techniques and Iran's support for and direction of Hezbollah and the IRGC's terrorist operations in Iraq between 2004 and 2011.[11]

- Appoint special master(s) to assess damages for Plaintiffs involved in attacks for which the Court finds Defendants liable. If the *Karcher* court has ruled on a pain and suffering framework for survivors of EFP attacks, the special master(s) can apply it; if the *Karcher* court has not ruled by that point, the special master(s) can limit their initial determinations to solatium and economics claims for claims brought by relatives and estates of decedents.

- Plaintiffs will keep the Court updated as to the status of the *Iran* cases so that the Court can determine whether to continue reviewing additional submissions or pause at any given point — depending on decisions reached by the *Iran* cases judges.

Date: July 31, 2020

          Respectfully submitted,

          OSEN LLC

          By: /s/ Gary M. Osen
              Gary M. Osen (DC Bar No. NJ009)
              Ari Ungar (DC Bar No. NJ008)
              Michael J. Radine (DC Bar No. NJ015)
              Dina Gielchinsky (DC Bar No. NJ011)
              Aaron Schlanger (DC Bar No. NJ007)
              2 University Plaza, Suite 402
              Hackensack, NJ 07601
              Tel. (201) 265-6400
              Fax (201) 265-0303

          TURNER & ASSOCIATES, P.A.
          C. Tab Turner
          4705 Somers Avenue, Suite 100
          North Little Rock, AR 72116
          Tel. (501) 791-2277

          *Attorneys for Plaintiffs*

---

[11] As noted above, Plaintiffs would submit a second round of attack-specific proposed findings and evidence once they have collected the necessary evidence.